A. H. Hill *v.* Nancy M. Shorey, Charles Shorey and Ezra Shorey.

### [In Chancery.]

*Spring of Water. Aqueduct. Deed. Reservation.*

The orator, being the owner of certain premises on which was a spring, the water of which was carried by an aqueduct to a tub situated westerly of the house on the premises, the waste water running thence on to the garden, conveyed the same to S., reserving, in his deed, "the right of taking all the waste water, as it now runs into the tub on said premises by aqueduct, to the lot formerly owned by J. Prescott, with the right and privilege of digging up and repairing the same, at any time, by paying all damage which it may be to the premises." Immediately after the execution of said deed, the orator laid an aqueduct, at considerable expense, from said tub to his lot, agreeably to said reservation. *Held,* that the intent of the parties, to be gathered from the nature of the subject matter, and the language used, must control as to the extent and effect of the reservation. *Held* that the reservation is a reservation of an interest and right in the *spring* itself to the extent named.

*Held* that the reservation allows the orator to hold and enjoy all the water that would run from the spring into the tub, and thence as waste water, by means of the aqueduct there at the time the orator executed said deed, or one like it.

*Held* that the grantee, or those claiming under him, had no right to move the tub to another place to the prejudice of the orator; nor to tap the spring, aqueduct or tub, so as to diminish the quantity, or deprive the orator of any of the water, reserved.

*Held* that the reservation contemplates that the grantee, or those holding or occupying under him, should keep the aqueduct in repair from the spring to the tub only so long as he or they use the water; but if they refuse or neglect to keep it in repair, the orator may enter and repair it, or lay a new one, without paying any damage for such entry, whenever, for want of repair or a new aqueduct, the water does not flow from the spring to the tub, in the quantity contemplated by said reservation; but in case the orator repairs the old, or builds a new aqueduct for the said purpose, the grantee or those claiming under him, will not be entitled to use any part of the water so conveyed from the spring to the tub at the expense of the orator.

*Held* that the orator was entitled to a decree for the damage he sustained in consequence of the wrongful interference with and obstruction of his said rights by the defendants, and that the defendants be perpetually enjoined from interfering with or interrupting the orator while repairing said aqueduct, and from committing any injury to said spring, aqueduct or tub, or the water therein.

Bill in Chancery. The orator alleges in the bill that he, on the first day of April, 1866, was the owner of about twenty acres of land in St. Johnsbury, situated on Caledonia street, on which land was a dwelling-house in which he then resided; and also on said land was a valuable spring of water on the east side of said street, and about twenty rods from the dwelling-house, situated on the west side of said street, which spring of water was carried by

an aqueduct to said dwelling-house, and all run into a barrel or tub standing on the west side of said house ; the waste water then running on to the garden westerly of the house ; that on the said first day of April, he was the owner of another piece of land, by bond or deed, lying westerly of the first mentioned piece, which was and is valuable for building lots, and on one of said lots he has already erected a building, said lot being known as the Prescott lot ; that on the second day of April, 1866, he sold and conveyed to one Charles Shorey, said land and buildings on Caledonia street, for the sum of twenty-three hundred and fifty dollars, as mentioned in the deed, making in the deed the following reservation : " Reserving the right of taking all the waste water as it now runs into the tub on said premises by aqueduct, to the lot formerly owned by J. Prescott, with the right and privilege of digging up and repairing the same at any time by paying all damage which it may be to the premises " ; that immediately after the execution of said deed, at the request and with the approbation and approval of said Charles Shorey, the orator laid down a lead aqueduct from said tub to his lot, agreeably to the reservation expressed in the deed, at the cost of forty dollars ; that Charles Shorey has conveyed by deed said premises, conveyed by the orator to him, to his mother, Nancy M. Shorey, who now resides thereon with Charles Shorey, and with his brother, Ezra Shorey ; Charles Shorey and Ezra Shorey, on or about the 15th day of April, 1867, cut off the lead pipe to the aqueduct leading from said spring to said tub, on the easterly side of Caledonia street, and put in a tub there for the purpose of using said spring of water, and allowing another family, residing in the house on the easterly side of said street, to use said water, by reason of which the orator is wholly deprived of all the waste water which flowed from said tub, and was conveyed by the aqueduct, laid down by him to his lot, and where he has erected his house ; that a large amount of water flowed from the spring, and run into the tub, and but a small portion of the water running into said tub at the time of the execution of the deed by the orator to said Shorey, was used, and that a large proportion of said water run away as waste water ; that the waste water from said tub is the

only means the orator has of supplying with water the Prescott lot so called, on which the orator has several valuable building lots, if supplied with water ; that by reason of the wrongful and wilful act of the said Charles and Ezra Shorey, in cutting off said lead pipe and stopping said water, the orator has suffered great damage, to wit, the sum of three hundred dollars ; that the said Charles and Ezra Shorey, have given out in speeches to the orator and other persons, that the orator has no right to said waste water or to the privilege and right reserved by him in said deed ; that they will not allow or permit him to repair said lead pipe where it is cut off, so that the water shall again run into the tub, where the orator has laid his aqueduct, for the purpose of taking the waste water reserved in said deed, and which belongs to the orator, to his premises.

The orator claims that by the reservation of said deed, whenever the water ceases to run into said tub from said spring, he has the right to repair the aqueduct leading from the spring, so that he can fully enjoy his rights reserved in said deed. The orator represents that the said Charles Shorey and Ezra Shorey had given out, in words and speeches to the orator and others, that the orator should never have the water again from said aqueduct; that they would stop the water from running into said tub, and would take up the tub, and put said water in another place.

*Prayer* that the said Charles, Ezra and Nancy, their servants, etc., be perpetually enjoined from interfering with or molesting the orator, or any person holding under him, in the full and perfect right of taking and using all the waste water from said tub, as reserved in said deed, and that the said defendants be perpetually enjoined from doing any act or thing to prevent or hinder the water from said spring passing by aqueduct to said tub, and be further enjoined and directed not to interfere or hinder the orator in repairing said aqueduct, leading from said spring, so that the water from said spring shall all again run into said tub from which said waste water is taken.

The joint and several answer of the defendants denies that the orator has any right whatever to meddle or interfere with said spring, or with said aqueduct leading therefrom to the tub, or re-

Hill v. Shorey et al.

pair the same without the consent of Nancy M. Shorey; admits that the said Charles and Ezra Shorey, sometime about the month of March, 1867, did cut off the lead pipe leading from said spring to said tub, and did at that time move said tub a short distance, to wit: about three rods nearer to said spring; but avers that it was not done for the purpose or with the intent of depriving the orator of any waste water flowing from said tub; that during the winter previous, in consequence of the defective construction and condition of said aqueduct, between said spring and the tub, as well as between said tub and the orator's Prescott lot, the same froze up and burst, both above and below said tub, and flooded the garden of the said Nancy, and thereby covered the same with ice, and the water ceased running into said tub altogether, leaving the premises of the said Nancy entirely destitute; and in order to obtain a supply of water for her premises, and for domestic use in her family, they, the said Charles and Ezra Shorey, did cut said aqueduct just above where the same had frozen and burst, and moved said tub to that point, as they lawfully might, and without this, the said defendants, or either of them, have never interfered or intermeddled, in any way or manner, with the said aqueduct from said spring. Alleges that the water continued to run into said tub, at the point aforesaid, until about the month of June, 1867, when the orator entered upon the premises of said Nancy, and removed the tub to the place where it stood originally, and made such repairs in the aqueduct that the water commenced running again into the tub; that the aqueduct from said spring to said tub, being old, leaky, out of repair, ruinous and fallen to decay, so much so that the water had frequently stopped running before that time, and, on or about the 15th day of September, 1867, it stopped running altogether, and has not run from thence hitherto; and by reason of the ruinous condition of said aqueduct, as these defendants believe, will not again run into the tub unless a new aqueduct is laid. And the defendants claim that the orator, under the reservation in his deed, had no right to enter upon the premises thereby conveyed, and in anywise dig up, repair, intermeddle, or interfere with said old aqueduct, between the tub and

73

spring, or to lay a new one in the same or any other place, or in anywise to repair, dig up, or intermeddle with said spring.

The plaintiff filed a replication to the defendant's answer; testimony was taken, and the bill was *pro forma* dismissed without prejudice in reference to the injunction, STEELE chancellor, from which decision the orator appealed. The testimony of the respective parties was in support of the averments in the bill and answer, and the result of it, as viewed by the court, is stated in the opinion.

*A. J. Willard* and *B. N. Davis*, for the orator.

*O. S. Burke*, for the defendants.

The opinion of the court was delivered by

WILSON, J. The right of the orator to maintain this bill of complaint depends upon the rights of the parties under the deed executed by the orator to the defendant, Charles Shorey, April 2, 1866. The deed in question contains the following reservation, namely : " Reserving the right of taking all the waste water as it now runs into the tub on said premises by aqueduct, to the lot formerly owned by J. Prescott, with the right and privilege of digging up and repairing the same at any time by paying all damage which it may be to the premises." The bill states, and the answer admits, the aforesaid conveyance ; that there was and is a valuable spring of water on said premises ; that at the time of said conveyance there was an aqueduct leading from said spring, through which the water at that time run from the spring into a tub on said premises near the dwelling-house, and that the orator's deed to said Charles Shorey contains a reservation in the words set forth in the orator's bill. The defendants admit the right of the orator under said reservation to take the waste water which might flow from said tub, and convey it by aqueduct to his Prescott lot, with the right to repair the same between the tub and his said premises. But the defendants insist, first, that they are under no obligation to keep the aqueduct in repair from the spring to the tub, or to keep the water running to

that tub ; second, the defendants insist that the orator has no right whatever to interfere with said spring, or with the aqueduct leading from the spring to the tub, or to repair the same without the consent of the defendant, Nancy M. Shorey, to whom the premises have been conveyed.

In regard to the litigated facts, it may be sufficient for the court to state that, upon examination of the testimony, we think the material fact sstated in the bill are established. The construction, which the defendants' counsel claim should be given to the deed, would make the right of the orator depend entirely upon the will of the defendants, or those who claim under them. This is equivalent to saying the orator has no right at all by the reservation. But this position can not be sustained. The construction must be upon the view of the whole language of the reservation. And the intent of the parties, to be gathered from the nature of the subject matter and the language used, must control. *Cooney* v. *Hays et al.*, 40 Vt., 474. From the language of the reservation, it is plain that the parties to the deed understood at the time of its execution the orator had reserved a certain and permanent interest and right in the premises, which could not be defeated at the will or pleasure of the grantee, his heirs or assigns. The reservation in the deed, of " the right of taking all the waste water as it now runs into the tub on said premises by aqueduct," is a reservation of an interest and right in the spring of water itself to the extent named. The words : " All the waste water as it now runs into the tub on said premises," means all the water carried, and all the water that would run from said spring to said tub by said aqueduct, or a like aqueduct, except such portion of the water passing into said tub as might be necessary for the use of the grantee, or other person claiming under him, the water for the use of the grantee, or such other person, to be taken from said tub, according to the terms and effect of the reservation. It is stated in the bill and proved that a large amount of water flowed from said spring by said aqueduct and run into said tub, and but a small portion of the water running into said tub, at the time of the execution of said deed by the orator to said Charles Shorey, was used; that a large proportion of said water run away as waste water;

that the waste water from said tub was and is the only means the orator had, or has, of supplying with water his said Prescott lot, and that the orator, immediately after the execution of said deed, laid down a lead aqueduct from said tub on to his said lot, agreeably to said reservation.   The construction which we give to said reservation allows the orator to hold and enjoy just what he reserved, that is, all the water that would run from the spring into said tub, and from thence as waste water, by means of the aqueduct, or one like that, which conveyed the water from the spring to said tub at the time the orator executed said deed, the aqueduct being kept in good and sufficient repair.

It appears that the tub mentioned in said reservation was situated on the west side of the dwelling-house, at the time the orator conveyed to said Charles Shorey the waste water then running on to the garden westerly of the house.   We think the reservation contemplates that the water should run from the spring to that tub, where the tub was situated when the orator conveyed ; that he reserved the right to take the waste water from that tub as it was then situated, and carry it to his Prescott lot, consequently the defendants had no right to remove the tub to the prejudice of the orator.   The defendants have no right to tap the spring, aqueduct or tub so as to diminish the quantity of water reserved by the orator, or to deprive him of any of the water so reserved.   We think the reservation contemplates that the grantee, or the person or persons holding or occupying under him, should keep the aqueduct in repair from the spring to the tub only so long as he or they use the water.   But if the defendants, or other persons who may own or occupy the premises so conveyed by the orator to said Charles Shorey, refuse or neglect to keep said aqueduct in good and sufficient repair from the spring to the tub, the orator has the right, and he may, for the purpose of enjoying his said reservation, enter upon the premises so. conveyed by him, and repair said aqueduct, or lay a new aqueduct from the spring to said tub, whenever the water ceases to run in said aqueduct, or whenever, for want of repairs or want of a new aqueduct, the water does not run from the spring to said tub in the quantity contemplated by said reservation.   If the orator repair said aqueduct, or lay a new

aqueduct from the spring to said tub, for the purpose aforesaid, the defendants will not be entitled to use any part of the water so conveyed from the spring to said tub at the expense of the orator. The reservation contains a stipulation as to damage done by making repairs of the aqueduct between the tub and Prescott lot, and as to this part of the aqueduct the question of damage stands upon the reservation. But if the defendants neglect to keep the aqueduct between the spring and tub in good and sufficient repair, or neglect to keep the water running from the spring to the tub, the orator is not to be made liable for damage for going on to said land between the spring and tub, and making reasonable repairs of said aqueduct, or laying a new aqueduct between said spring and tub. The orator is entitled to decree, among other things, for the damage he has sustained in consequence of the wrongful interference with and obstruction of his said rights by the defendants. The defendants must be perpetually enjoined from interfering with, or in any manner interrupting, the orator while repairing said aqueduct, and enjoined from committing any injury to said spring, aqueduct, or tub, or the water therein.

We think the orator is entitled to the relief prayed for in his said bill of complaint.

The *pro forma* decree of the chancellor is reversed, and the case is remanded to the court of chancery, for a decree in favor of the orator, conformable to this decision, and for the orator to recover his costs.