## SIMEON WEBB v. W. E. LAIRD.

### [In Chancery.]

#### Water Rights.   Mill Owners.   Damages.   Injunction.

1. When two mill owners, whose mills are on the same stream, one below the other, have a mutual interest in the upper dam, used as a reservoir for storing water to propel the machinery of both mills, they are, in the absence of any contract, under a mutual duty to maintain the dam; and a court of equity will compel each to contribute to its maintenance in proportion to his relative interest so long as he exercises his right to the water.

2. DAMAGES.  And the lower owner is not entitled to damages occasioned by the upper owner's unnecessary delay in repairing the reservoir dam.

3. DAMAGES. INJUNCTION.  A party is not entitled to damages resulting from obedience to an injunction procured by himself, when he knows the situation of the property affected by it.

4. CROSS BILL.  The cause is remanded for further reference, under the cross bill, to determine the relative rights of each party to the water power, and apportionment of the expenses incurred in its maintenance.

BILL IN CHANCERY.   Heard on pleadings and a special master's report, September Term, 1885, Washington County, POWERS, Chancellor.   Bill pro forma dismissed.

It was alleged in the bill that W. C. Peck, March 1, 1887, in pursuance with a previous contract, deeded the grist-mill to the orator, and subsequently the saw-mill to the defendant; that "the orator's mill is dependent on the water of the pond at the saw-mill, which is some 20 to 30 rods above the grist-mill, for his water to do his grinding at his mill aforesaid, as the water in said stream, at most seasons of the year, is insufficient to do the grinding at said mill." The deed from Peck to the orator was set out in the bill, as quoted in the opinion, showing the orator's right to the water in defendant's flume. It was also alleged that defendant had torn down the old dam and built a new one; that orator believed the new dam was insufficient and dangerous; that defendant "has . begun to tear down the saw-mill flume that furnished your orator's mill with water through the waste-gate," etc.; that he does not intend to leave any flume; that he has not left any opening in the new dam as low by about two feet as the bottom of the saw-mill flume; that the orator has a right by his deed to draw water at all times from the flume; that "by the terms of said conveyance it was and is the duty of the said Peck and his grantees to keep and maintain a flume to the saw-mill in the same condition it was at the date of the contract and deed." The prayer was: That defendant be enjoined from tearing away said flume, and that he be ordered to restore the same as it was; that the rights of the orator be fixed; that defendant be restrained from preventing the orator from drawing water from the flume; that defendant be ordered to cut down the dam so that the "orator can draw the water as low as by the old dam," etc; and for further relief.

The orator obtained an injunction enjoining the defendant from "destroying the flume at the saw-mill or from hindering the orator from drawing water from the saw-mill flume for the use of the orator's mill, as he has been in the habit of using the same; and if the defendant has removed the waste-gate, that he shall restore the same to its former place;" * * * "that the defendant be enjoined from shutting the water out of the

flume aforesaid, so that the orator cannot use the same." It was agreed that defendant's answer should stand on hearing as a cross-bill, with a prayer for such relief as the defendant was entitled to. The answer admitted that the deed from Peck to the orator was set out correctly in the bill (as quoted in the opinion), but alleged that, in the fall of 1881, the dam had become decayed, worthless, and needed to be built over; that the gate and flume needed repairing; that defendant could not repair them without shutting out the water; that while he was repairing the dam the orator brought his bill of complaint, and caused the injunction to be served on him; that defendant had no counsel, but acted under the injunction, as he supposed it was his duty to do.

The master found: At the saw-mill there was a log dam and a large pond of water; a flume was connected with this dam from which a penstock carried water to the saw-mill wheels. Leading from the flume there was a waste-gate, through which water was allowed to escape into the bed of the stream for the use of the grist-mill below, when a sufficient quantity did not flow over the dam or through the saw-mill wheels for that purpose. When the saw-mill was in operation the orator had no use for the waste-gate; but when it was not, he opened the waste-gate by a wire strung from the grist-mill to the saw-mill flume. In the summer of 1881, the saw-mill dam became so decayed that a new one was required. On or about October 8, 1881, the defendant commenced work on the dam. He first drew all the water from the pond, and removed the waste-gate. The new dam was erected just below the old one. It went through the flume, which was cut off for that purpose. An aperture was left in the dam for the flume; and just east of this was another aperture with a gate, intended for the use of the orator in place of the waste-gate in the flume. In eight days the dam was so far completed that water could have been stored and drawn through the waste-gate for the use of the grist-mill; but the defendant did not communicate this fact to the orator, nor inform him as to the use of the waste-gate. But

the orator was about there more or less every day watching the progress of the work; he saw the gate in the dam, and was informed by others that it was for him. The bill was dated October 28th, 1881, the injunction the 29th; and both were served November 3, 1881. On October 27th the dam was so far completed that the defendant, with safety, allowed four or five feet of water to accumulate in the pond for the purpose of sawing out a bill of lumber; but the dam was wholly insufficient to stand against the pressure of a full pond. When the injunction was served the defendant took no steps to consult counsel, or to have it modified; but he read it, and thinking that he had no right to complete the dam, he proceeded to replace the planks which he had removed from the sides and end of the flume; and as a consequence the water gradually rose until the pond was full. On November 10th, owing to the pressure of a full pond, and the incompleteness of the stone work, dam, etc., a considerable portion of the dam was carried away; and the rush of water past the orator's mill caused damage to his dam to the amount of $25. The fore part of November, 1882, the defendant made some needed repairs on the dam, and, without intending to violate the injunction, was unnecessarily slow in making them, and thereby damaged the orator $5. The orator made complaint for violation of the injunction, and on the 13th of November the defendant was arrested for such violation. The other facts are sufficiently stated in the opinion.

*Geo. W. Wing*, for the orator.

The orator was under no liability to pay any of the expense of rebuilding the dam. He has a deed of certain rights in the water sufficient for the use of his mill, as it was used at the time of his purchase. He is not a tenant in common with the defendant, and has no right to dictate or to make repairs at the expense of the defendant. His right is only an easement—the right to draw from the flume.

In *Dodge* v. *Badger*, 12 Mass. 64, *Campbell* v. *Mesier*, 4

Johns. Ch. 335, 4 Mass. 550, *Elliott* v. *Shephard*, 25 Me. 371, Aug. & A. Corp. s. 161, the doctrine of contribution and liability of tenants in common is considered. But these authorities are not applicable here. The orator is entitled to the damages found by the master. The defendant made no provision for the orator to draw water; and the orator, supposing his rights were in jeopardy, brought suit, and what the defendant did resulted in damage.

*S. C. Shurtleff*, for the defendant.

The right to take the water was not an appurtenance. *Brace* v. *Yale*, 4 Allen, 393; *Plimpton* v. *Converse*, 42 Vt. 712. The parties have a common interest in the reservoir dam, and there being no contract, the law imposes on them a common duty to keep it in repair; and if either refuses to contribute, he should be foreclosed of the right to use the water. *Sanborn* v. *Braley*, 47 Vt. 170. The defendant obeyed the injunction, and is not liable for the result; besides, damages cannot be recovered which accrued subsequently to the bringing of the bill. *Waterman* v. *Buck*, 58 Vt. 519.

The opinion of the court was delivered by

Ross, J. Wesley C. Peck formerly owned the mills, and all the water power, rights and privileges in the stream, now in contention between the orator and defendant. These consist, among other things, of a grist-mill and saw-mill. The grist-mill is located further down the stream, and has a small dam and pond for turning the water of the stream upon the wheel, but not of a capacity to accumulate any considerable water more than what flows in the stream. The stream is small, and only in time of high water furnishes sufficient running water to propel the machinery in either mill. The saw-mill, located a few rods above the grist-mill, has a dam and pond capable of storing a very considerable quantity of water. To operate the grist-mill, when the water flowing in the stream was insufficient for that purpose, Mr. Peck arranged to draw water from the

pond at the saw-mill into the stream through a waste-gate in the saw-mill flume, when the water otherwise flowing in the stream was insufficient to propel the grist-mill. When the saw-mill was running the water used ordinarily furnished a supply to the stream for operating the grist-mill, and if a full supply was not thus furnished, he drew also through the waste-gate. While owning and thus using the properties now owned by the orator and defendant, Mr. Peck conveyed the grist-mill to the orator, and in the conveyance granted the privilege of drawing water from the saw-mill pond in the following language : " And also the privilege of drawing water at all times from the pond through the waste-gate of the saw-mill flume situated on the stream above,   *   *   .*   sufficient for doing all the grinding that may become. necessary or called for by the public at said grist-mill as heretofore." The parties are in substantial accord in regard to the quantity of water which the orator is entitled to draw, and in regard to the manner in which it is to be drawn.

They differ with reference to the extent of the orator's rights, and with reference to the duty of the orator to contribute toward the maintenance of the dam at the saw-mill. The orator contends that he has the right to draw the water only as an easement, and that it is the duty of the defendant, who has become the owner of the saw-mill and privilege, to maintain the dam and secure to him the privilege of drawing the water at all times at his own expense. There is no contract between the parties, or the defendant's grantor and the orator, in regard to maintaining the dam. The defendant contends, there being no contract imposing the duty upon him to maintain the dam at the saw-mill privilege—that he can abandon or give up the use of the water power created by the dam and allow the dam to waste and perish; and the privilege granted is more than the mere right to draw the water, that it confers whatever is necessary to make the privilege available—a right to maintain the dam and pond, and have the water of the stream stored in the pond, for his use. By whatever name the orator's privi-

lege may be designated, in the absence of a contract to that effect, we do not think the defendant is under any legal obligation to maintain the dam and pond for the sole use of the orator; nor is the orator under any obligation to maintain, or help to maintain, them for the sole use of the defendant. Either party may withdraw from the use of the water power created by the dam and pond, and be under no duty to the other to contribute to the maintenance of the dam and pond. In such case the other party has the right to maintain the dam and pond to preserve the power for his own use. The orator's privilege, conferred by the deed, would be very limited and comparatively worthless if he could not maintain the dam and pond when the defendant should withdraw from using the water power; and for that reason be under no necessity to maintain it. He is under no contract liability, express or implied, to maintain it for the sole use of the orator. This court has heretofore placed a similar construction on a reservation of analogous water rights. In *Hill* v. *Shorey*, 42 Vt. 614, the orator conveyed a tract of land on which there was a dwelling-house and a spring of water, with an aqueduct conveying the water from the spring to a tub near the house. In the deed he reserved the right to take the waste water from the tub to an adjoining tract of land. It was held that the reservation gave him an interest in the spring of water, with the right to maintain the aqueduct from the spring to the tub, if the grantee did not. We think the principles of that decision sound and applicable to the present case. Applying them, the orator, by the privilege of drawing water from the waste-gate of the flume from the dam of the saw-mill pond, acquired an interest in the water power created by the dam and pond—such an interest that he has the right to maintain that power at his own expense if the owner of the saw-mill privilege abandons it.

Neither the orator nor the defendant being under any contract obligation to maintain the water power for the exclusive benefit of the other, either can abandon it, and be under no obligation to aid in its maintenance. Each having an interest

in the water power, and the right to maintain it if the other abandons it, it follows that they have a mutual interest in, and are under a mutual duty to maintain, it so long as each continues to exercise his right to it. While enjoying this mutual interest under the mutual duty, equity will compel each to contribute towards its maintenance, according to his relative right and interest; and if he refuses thus to contribute, equity will enjoin him from using the power.

This holding necessitates a further reference under the cross-bill to determine the relative right of each party to the water power created by the saw-mill dam and pond, and an apportionment of the expenses properly incurred in its maintenance. This holding that the defendant was under no legal obligation to maintain the water power for the sole benefit of the orator to draw from, establishes that the orator has no right to the five dollars, found by the master, as damages occasioned by the delay of the defendant in completing necessary repairs in the fall of 1882, inasmuch as it was the right and duty of the orator to have made the repairs equally with the defendant; and if the defendant did not proceed with sufficient rapidity to suit his convenience, he could have made them himself. The solicitors substantially agree that the relative rights of the parties to the use of the water power created by the saw-mill dam is to be determined as they were in use at the date of the contract and conveyance from Peck to the orator.

II. The only other matter necessary to be considered in the present stage of the case is whether the orator was entitled to the injunction which he procured against the defendant. We think, neither on the facts found by the master, nor under the relative rights and duties of the parties in and to the water, was he entitled to the injunction. It is conceded that it was necessary to rebuild the dam, and it is found that the defendant was proceeding with due diligence to rebuild it in a proper manner. Neither the fact that the defendant used it in a safe and proper manner for his own convenience before it was completed; nor the fact that he had not then

restored the waste-gate to the flume—under the circumstances detailed, that he had provided an equally beneficial waste-gate in the dam for the orator's use, of which he had knowledge, and that the defendant would have restored it in the flume if the orator had asked it—gave the orator the right to an injunction which, complied with in the manner the defendant had a right to, and did understand it, endangered and caused a portion of the dam to be swept away. The orator's solicitor contends that the defendant, knowing such a compliance with the injunction would endanger the dam in its then incomplete condition, should have applied to the chancellor for a modification of it. The orator also should have known, for he was fully cognizant of the situation of the dam, that it would be endangered by a compliance with the injunction in the manner in which the defendant had the right to understand it. A party cannot shield himself from the legitimate consequences of a rightful obedience to the behests of an injunction procured by him; nor can he be heard to claim that the other party should not yield such obedience; nor to claim damages to himself from such obedience. On the facts found there is no legitimate ground for the orator to recover either of the sums found by the master as damages, if the pleadings were such as to allow their recovery. What damages, if any, the defendant sustained by the injunction is not now before us, but will properly come before the Court of Chancery on the defendant's application to have them ascertained under the injuction bond.

On these views the decree dismissing the orator's bill was correct, and would be affirmed if it were not for the cross-bill, which it was agreed the defendant might file. The hearing in this court has proceeded as though the cross-bill were filed. To furnish the proper relief in the cross-bill further proceedings in the Court of Chancery are necessary; and the cause is remanded with a mandate settling the rights and duties of the parties in accordance with the views already expressed.