(121 App. Div. 88)

## LOOMIS v. LOEWENHEIM et al.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1907.)

WATERS AND WATER COURSES—WATER POWER—DAMS—COST—CONTRIBUTION.

A dam crossing an east and west river furnished a water power owned in equal moieties by the owners of the lots on the north and south sides of the river. The dam being in a dilapidated condition, the owners of the north side appointed a committee, of which plaintiff was an active member, authorized to construct a new stone dam and assess the cost to the property owners in the proportions fixed by a prior judgment of the Supreme Court in a specified action to which the south side owners were not parties, the agreement also reciting that the south side owners should be assessed an amount equal to that assessed against the owners of one of the seventeenths on the north side, such proportion having been determined in the prior judgment to amount to $354/8500$ of the total cost of the improvement; but the agreement also declared that such provision should not be used as a precedent, or as changing the legal rights or obligations between the owners and users of the water on the north and south sides to contribute their exact legal proportion for any construction or maintenance or repairs of the dam or dams in the river. *Held*, that the owners of the south side lots who knew of and acquiesced in the con-

struction of the dam were equitably liable for one-half of the cost thereof, notwithstanding such agreement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Waters and Water Courses, § 198.]

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Special Term, Herkimer County.

Suit by Watts T. Loomis against Ignatz N. Loewenheim and others. From a judgment in favor of plaintiff for the recovery against defendants separately of specific sums of money, and adjudging such sums to be liens on certain parcels of real estate described, and directing a sale thereof to satisfy the judgment, defendants appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles E. Snyder, for appellants Loewenheim, Ladue, and Henry Cheney Hammer Co.

Robert F. Livingston, for appellant Little Falls National Bank.

Albert M. Mills, for respondent.

ROBSON, J. Appellant and respondents own rights in the waters of Mohawk river, appurtenant to premises within the limits of the city of Little Falls, severally owned by them or in which they have separate interests. The serviceable value of these rights is practically dependent upon the maintenance in that stream of a dam, with suitable bulkheads, canals, and waterways in connection therewith. There are other owners of similar water rights, whose interests are not now presented for adjudication; but they will be to some extent necessarily referred to hereafter in considering the rights of the parties to this appeal. All of the water rights above referred to are appurtenant to premises lying on the north bank of the river, the general course of which is at this point from west to east. A dam, extending from shore to shore, has been for upwards of 70 years maintained in practically the same relative position as the present one, which ponds the water of the river and furnishes the source from which the water is drawn to serve the premises in question, and is known as the "Middle Dam." It appears that the aggregate rights which the owners of premises on the north side of the river have in the water impounded by this dam is limited to the use of one-half thereof. The right of use of the remaining moiety is appurtenant to premises on the south side. The determination of the individual rights of the north side owners and their relative duties in repairing and maintaining this dam and its appurtenances has apparently been a fruitful source of discussion, some phases of which have resulted in a resort to the courts in aid of a settlement of the dispute. The record on this appeal sufficiently sets forth the various conveyances under which these rights are held, and by which they are or are intended to be limited, and also the material parts of the various records of the actions and legal proceedings by which they have been to some extent judicially fixed and determined. An examination of these various documents and records, appearing in the printed case presented on this appeal, leads us to the conclusion that, as between the two groups of owners, by which we mean to refer to

the north side owners as one group, and the south side owners as the other, their relative duties and obligations in maintaining, repairing, and, if necessary, rebuilding this main dam have not been determined, nor agreed upon. The relative rights and duties of the north side group of owners the one to the other have been determined; and, as between themselves, leaving out of view the rights and duties of the south side group, they are not in any way in dispute. The ultimate declaration of these rights and duties was made by a judgment of the Supreme Court, procured in 1893, in an action to which all the north side owners were parties. By this judgment the extent of each water right appurtenant to the lots and premises of the several owners was determined, and it was further adjudged that each parcel was subject to conditions and covenants that there should be paid and contributed at all times a "just proportion of all necessary expenses for the proper maintenance of the dam," etc., which included building, repairing, and maintaining the same. This relative proportion was accurately fixed, and the condition, covenant, and liability to so contribute such share and proportion were adjudged to be a lien and charge upon each parcel to which the same was assigned. It will be observed that this judgment requires these north side owners to pay and contribute their just proportion of the expenses in maintaining the dam in question as between themselves only, for no right or duty of the south side owners seems to have been involved in or adjudicated in that action. The just proportion which the north side owners were thereby adjudged liable to pay must necessarily be the proportion of the expenses for purposes indicated in the judgment as justly chargeable to the north side owners; for only their rights and duties, as between themselves, were before the court for adjudication. If the south side owners were liable to contribute a portion of this expense, then to that extent the expense could not be justly charged against the north side owners. If the payment of the whole expense properly belonged to the north side, then, of course, the effect of the judgment was to charge the determined proportional share thereof on each north side lot; but, unless it appears that the whole charge must be paid by the north side owners, then a requirement to pay the ratable share of the whole sum is not and cannot be insisted upon as a "just proportion" of the expense.

Shortly after the entry of this judgment it was found that the dam was dilapidated and unserviceable and that a new dam to take its place was a conceded necessity. Notices of meetings of north side owners were sent out, and meetings, attended by some of those owners, were held to consider the situation and determine upon some plan of action in building the new dam. The effective outcome of these meetings was the adoption of a resolution which is as follows:

"Resolved, that a committee of four of the mill owners, viz., W. T. Loomis, Charles King, Victor Adams, and G. D. Waterman, be appointed for the purpose of constructing a stone dam across the Mohawk river at Little Falls, N. Y.. to take the place of the present middle dam, on the plans submitted by Gen. P. C. Ricketts, and to make such other repairs and improvements as shall be necessary; that preparations therefor be made as speedily as practicable; that said committee shall in its discretion contract for the whole or any part thereof, and for other repairs and improvements; that

said committee may in its option employ the force requisite, purchase the necessary material, tools, and machinery, and cause the work or any part thereof to be done by the day, and not by contract; that said committee is empowered to borrow from the owners or others needed funds for the construction thereof and for the payment of the necessary expenses for the same, and for such repairs and improvements as shall be necessary, and upon the completion of said dam or repairs to assess upon said owners entitled to draw water therefrom the expense thereof, in the proportion fixed by the judgment of the Supreme Court in the action of Loomis v. Henry Cheney Hammer Company, towards the construction of said dam; that said committee is hereby authorized to control and supervise such construction and repairs and all things incident thereto as the agents of the several owners."

The judgment mentioned in the resolution is the judgment of May 5, 1893, to which we have already referred. Of the members of the committee designated in the resolution Loomis is the plaintiff in the present action, King and Adams are defendants, and Waterman is and was the treasurer of defendant Henry Cheney Hammer Company. This committee seems to have taken charge of building the dam, and the contract under which it was finally built was signed by all of them. The plaintiff was the most active member of the committee. The money to build the dam was borrowed by the committee on notes upon which he became liable as indorser. It will be observed that the proceedings in relation to building the dam, to which we have referred, in their effect, so far as appears, relate only to the north side owners. The south side owners, as such, and the south side property, are not mentioned. The first and practically the only reference, in the proceedings leading up to building the dam, to the south side owners and their liability to contribute anything to the expense thereof, appears in a memorandum of agreement bearing date the same day the resolution above quoted was passed, which, after reciting the necessity for building a new dam and immediate action with that end in view, then appoints the same persons who are named in the quoted resolution a committee for the purpose of constructing such dam. It also designates the functions of the committee in practically the same terms as appear in the resolution, with the important exception that the committee shall assess upon the several owners the expense of the dam in the proportion fixed by the Loomis judgment, "except that the owners drawing water from that level on the south side of the river shall be assessed an amount equal to that assessed against the owners of one of the seventeenths on the north side of the river." The agreement further provided:

"It is understood, however, that this agreement is not to be used as a precedent, or regarded as creating, affecting, or changing the legal rights or obligations as between the owners and users of water on the north side and those on the south side of the river to contribute and exact contribution in the future for any construction, or maintenance, or repairs of the dam or dams in the river; that said committee is hereby authorized to control and supervise such construction and all things incident thereto as the agents of the undersigned, the several mill owners."

The proportion of expense for which an owner of an interest referred to in the agreement as a "seventeenth" was liable was well understood, and was fixed by the Loomis judgment at $^{354}/_{8500}$ of the

total amount thereof. This agreement was not signed by all owners; among those not signing being the appellant Henry Cheney Hammer Company. The dam was completed under the contract made by the committee at a total expense of $15,950.89; and, as appellants in terms concede, there is no dispute but that the dam in question was reasonably necessary and that its cost was reasonable. The committee then proceeded to assess the cost of the dam, charging each separate parcel with the proportional share thereof, as they determined it, following the method pointed out in the agreement to which we have referred. This assessment was made by, or at least concurred in, by all the members of the committee except Waterman. He objected to the assessment on the plan by which the south side owners were charged only $354/8854$ of the total expense of the dam, and insisted that the south side owners should bear one-half the total expense, and that the remaining one-half only should be charged to the north side owners in the proportions indicated. Notices of the assessment thus determined on were sent to each north side owner. Ultimately all of them paid up except the appellants, one of whom, it was stated on the argument, has paid since the appeal herein was taken. Loomis, who, as we have said, was liable on the notes on which the money for building the dam was raised, eventually took them up, and, the appellants still declining to pay the amounts assessed to them, brought this action to enforce payment thereof. Included in the amount paid by Loomis was an assessment for some repairs. Appellants admit their liability to pay the amount of their several assessments for the repairs, as they were made upon a portion of the hydraulic works in which the south side owners concededly had no interest.

Except for the reasons hereinafter stated, we should be inclined to agree with respondent's claim that appellants are estopped from questioning their liability to pay the several amounts with which their lots are respectively assessed. They are clearly chargeable with knowledge that the new dam was necessary, and it was thereafter constructed for the benefit of all the owners with their express or tacit consent. If, therefore, the construction of the new dam was an undertaking of the north side owners alone, without the concurrence, express, or implied, of the south side owners, then necessarily, in the first instance at least, the expense of construction, of which each owner is to pay a just proportion, would be the total cost of their joint undertaking. We do not think, however, that the case before us presents exactly that state of facts. As disclosed by the record, the premises on the south shore, to which the right to use one-half of the water from this dam is appurtenant, are owned by the respondent, Loomis, and his two sisters, Louisa L. Burrell and Adelaide Loomis, as tenants in common. Unless their liability is modified or changed by some agreement or circumstance not disclosed by the record, provided the new dam was built with their knowledge and consent, one-half of the expense thereof would be chargeable to them as such owners. Webb v. Laird, 59 Vt. 108, 7 Atl. 465, 59 Am. Rep. 699; Campbell v. Meiser, 4 Johns. Ch. 334, 335; Rindge v. Baker, 57 N. Y. 209–214, 15 Am. Rep. 475. Loomis was the owner of one of the north side lots, as

was also his sister Louisa L. Burrell. Adelaide Loomis does not appear to be interested in the north side premises. Both Loomis and Mrs. Burrell concededly knew of and acquiesced in the project of building the new dam. Their acquiescence cannot be limited, as the case is now presented, to the building of the dam solely for the benefit of the north side lots; and they are each, therefore, liable to pay the just proportion of the expense of its construction properly chargeable on their interests in the south side premises. We do not now attempt to determine what that just proportion may be.

The action which the plaintiff has brought against defendants is essentially an equitable one. As a part of the relief sought therein he asks that an account of all matters alleged in the complaint be taken including the expenditures for building the dam, and a determination by the accounting of the amount thereof which remains unpaid to him, and which he is entitled to have rendered to him. He then asks contribution and recovery of the defendants of the sums, which he claims are unpaid, in the amounts he sets forth, and which he necessarily claims the accounting will show him to be equitably entitled to recover, and asks enforcement of payment in the usual form. The answering defendants set up as a part of their defense to the action the claim that plaintiff and his sisters should equitably pay one-half of the expense of building the dam, instead of the minor fraction thereof arbitrarily fixed by the agreement to which we have referred, and further allege a defect of parties, in that the third south side owner, Adelaide Loomis, is not made a party to the action. The decision of the trial court awarded judgment in plaintiff's favor for proportionate amounts of the total cost of the dam, fixed in accordance with the terms of the agreement of October 25, 1894, and does not assume to pass upon the question whether or not the south side owners are equitably chargeable with a greater proportion of the expense of the dam than that specified in the agreement. This decision of the court, we think, was erroneous in that particular. Plaintiff had asked for an accounting, that the amount which he was equitably entitled to recover might be ascertained. Defendants tendered the issue that he and his co-tenants in common, as south side owners, should pay a larger portion of the expense than they had been charged with. Certainly those defendants who are not parties to the agreement were entitled to have that issue determined, at least so far as plaintiff's liability to pay a greater proportion of the expense was concerned.

If it be urged that, as to the answering defendants who signed the agreement, they are bound by its terms in fixing the proportion of expense each owner is to pay, the answer to that objection is that the plain purpose of the agreement is to furnish a working basis for the committee to act upon, and not in any way for the purpose of affecting or changing the relative rights and obligations of the north and south side owners. The record does not show that the answers of defendants, raising the issue as to the liability of the south side owners to pay one-half of the expense of the dam, were served upon the defendant Louisa L. Burrell; and, that issue not having been tendered her for reply, the court probably could not, in the state of pleadings existing at the trial,

pass upon that question so as to bind her by the court's decision. We have no doubt that this matter may be corrected on the new trial, which we direct; and we also hold that Adelaide Loomis should be brought in as a party to this action, to the end that the ultimate rights of the parties here involved may be definitely determined by the judgment to be awarded in this action, and multiplicity of suits avoided. - A new trial should be granted, with costs to appellants to abide the event.

Judgment reversed on law and facts, and new trial granted, with costs to appellants to abide the event. All concur, except McLENNAN, P. J., and KRUSE, J., who dissent.

