ISRAEL TRUDEAU *vs.* CLARISSA FIELD, et als.

May Term, 1897.

Present: Ross, C. J., ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Contracts Touching Use of Common Property Enforceable in Equity— Easement in Dam—Obligation to Repair or to Rebuild.*

The bill as drawn is plainly demurrable but, upon request of both parties, is treated as if amended in certain particulars.

It is not necessary to decide whether certain covenants would be held at law to run with the land, since equity will enforce contracts entered into between prior grantors and grantees, in regard to the use of property held in common or descending from a common source, against subsequent owners affected with notice thereof.

A conveyance of "the right of drawing water" from a dam, though describing it as "a certain piece of land," and running to the grantee and his heirs and assigns forever, amounts to a grant of an easement only.

Such a conveyance creates an easement in the existing dam, only, and does not bind the grantor to maintain the dam for the benefit of the grantee.

A conveyance of rights in a mill-dam, containing a provision that the grantee shall "be at one-half the expense of keeping the dam in repair," does not bind the grantee who accepts it to share the expense of rebuilding the dam if destroyed.

A grants to B an easement in a dam, and afterwards conveys other rights in the same dam to C, which C in turn conveys to D, inserting in the conveyance a provision that D shall share the expense of rebuilding the dam in case of loss. *Held*, that B cannot enforce the provision.

BILL IN CHANCERY. Heard upon demurrer at the February Term, 1897, Orleans County. *Taft*, Chancellor, sustained the demurrer and dismissed the bill with costs. The orator appealed.

The orator claimed as successor to the rights conveyed to Benjamin F. Herbert by Calvin Harman by the deed of June 11, 1842.

*W. W. Miles* for the orator.

*John Young* for the defendants.

Ross, C. J. The demurrer challenges the sufficiency of the facts set forth in the bill to entitle the orator to the relief prayed for.

The bill sets forth, that, on August 26, 1827, Calvin Harman and D. W. Harman owned land on both sides of Black river in Coventry, on which there stood a saw mill and a grist mill, operated by a water power created by a dam across the river immediately above the saw mill; that on that day by a deed containing the usual covenants they conveyed the grist mill, with the land on which it stood, and certain rights in the water power to Elijah Cleveland & Co., which company was a partnership, consisting of Cleveland and three others. In the descriptive portion of the deed is this clause: "Cleveland & Co. to be at one-half of the expense of keeping the dam in repair;" that by subsequent conveyances by Cleveland alone his right and title in the grist mill property and water rights vests now in the defendant, Clarissa Field, and the other defendants interested with her. The bill does not show whether, or how, the rights of the other three partners, if at all, became vested in Cleveland, but it alleges that the condition or agreement in regard to bearing one-half the expense of keeping the dam in repair was in the subsequent conveyances. The bill then states that, on April 6, 1836, Calvin Harman, without stating whether he had become possessed of the rights and title of D. W. Harman therein,

conveyed another portion of property by metes and bounds, and therewith, certain water rights connected with the water power and dam, to Elijah Cleveland. This conveyance was by deed poll and contained in the descriptive part of the property and rights conveyed this provision: "Provided, nevertheless that, it is understood and agreed that the said E. Cleveland shall be holden and bound to be at one-twentieth part of the expense of keeping the dam in repair from which the above water is to be taken." This right is called the Starch Factory right and is restricted to be so used as not to damage the grist mill right. The bill alleges that this right is now in defendant George D. Walworth. It does not show whether Cleveland owned the grist mill and its rights and privileges when he owned the starch factory premises and its rights and privileges. In the chain of title of the starch factory premises, Cleveland conveys to Aldrich & Burbank, but no subsequent conveyance by Aldrich is alleged or set forth. The deed from Cleveland to Aldrich & Burbank contains the provision in his deed in regard to being at one-twentieth of the expense of repairs of the dam, and adds thereto, "or of building a new dam should it become necessary." The bill further sets forth that Calvin Harman, alone, by deed June 11, 1842, conveyed to Benjamin F. Herbert, his heirs and assigns, forever, certain premises, denominated in the deed "a certain piece of land," described as follows: "The right of drawing water from the dam across Black river just above Bean's clothier shop for the purpose of doing all things, that may be done by water power in carrying on the tanning and dressing of leather, provided, at all times, that said water shall not be used for any other purpose, nor to the injury of privileges granted heretofore for other purposes." The deed contains the usual covenants by the grantor of ownership, right and title to convey, and that the premises are free from incumbrance. It then sets forth a deed by the administrator of Charles F. Herbert to the

orator of a tannery and land on which it stands,—describing it,—"with the privileges and appurtenances thereof." It is not claimed that the last deed conveys what was conveyed by the deed from Calvin Harman to Benjamin F. Herbert otherwise than what may be included in "the privileges and appurtenances thereof." Although not stated in the bill, it is conceded, on agreement, that Charles F. Herbert took the water rights of Benjamin F. Herbert, and that the former had died intestate before the making of the administrator's deed. The bill then states that Calvin Harman by quit claim deed conveyed the saw mill premises to Elijah Cleveland, which by like conveyances have come to defendant George D. Walworth; that one of the intermediate conveyances from E. H. Taylor to Henry Hays contains the clause, "and said Hays agrees to do nine-twentieth of the expense of keeping the dam across the river at the head of the aforesaid mill. All the conveyances are by deed poll. None of them are alleged to have been recorded. Nor is it directly alleged that the conveyance of the right to the water from the dam had ever been put to use and connected with any tannery works. The dam existing at the time of the several conveyances was swept away and rebuilt mostly by the orator.

(1) From these conveyances the orator avers and contends, that by virtue of the deed from Calvin Harman,—the common source whence all the water rights sprang,—to Benjamin F. Herbert of the tannery rights and that he, his heirs, and assigns should forever enjoy the rights, an implied covenant arose on the part of the common grantor that there should forever thereafter be kept and maintained a dam substantially like the one existing at the time of the grant, from which Herbert, his heirs and assigns could take water as provided in the deed; that the grant was an easement in the premises and water rights then owned by Harman, consisting of the saw mill premises, the right to make the owner of the starch factory premises contribute

*29*

one-twentieth of the expense of keeping the dam in repair and the right to make the owner of the grist mill premises contribute one-half such expense, and that thereby the saw mill premises, grist mill premises, and starch factory premises became burdened with the easement, and bound to keep the dam in repair in such a manner that Herbert, his heirs, and assigns, forever thereafter might fully enjoy the rights and privileges conferred by the deed to him from Calvin Harman.

Is this contention sound? In considering the soundness of this contention, we need not consider the nice questions and distinctions which have been taken and established in regard to covenants which run with land, and which are available to the covenantee's assigns,—such as whether such covenants can arise on the part of the grantee in a deed poll; whether a privity of estate exists between the parties, and whether the covenant on the part of Harman to Herbert was personal or a covenant in gross, many of which have been presented in argument and authorities in support of them cited. This is a proceeding in equity. Equity enforces contracts and covenants in regard to property entered into between prior grantors and grantees, in regard to the use of the property, especially if common property or property descending from a common source, against subsequent owners affected with actual or constructive notice of such contracts and covenants. Pom. Eq. §§ 689, 1295, 1342. Although not so alleged in the bill, it is probable that all the conveyances set forth of these several properties and rights, surrounding and connected with this water power, were duly recorded so that the parties to this suit have constructive notice of the contents of the several deeds. It is also probable that the right to take water from the dam given by the deed from Calvin Harman to Benjamin F. Herbert was in use and connected with some tannery works which were conveyed to the orator by the administrator of Charles F. Herbert, so that the water

right then in use would be appurtenant to the tannery premises conveyed. Such use once established under the deed from Calvin Harman to Benjamin F. Herbert would be notice to or put upon inquiry—which would be equivalent to notice—all persons subsequently taking a conveyance of the water rights connected with the saw mill, and probably of the water rights connected with the grist mill and starch factory, because arising from a water power in which all had some common rights. The bill is clearly demurrable as now framed. For the purpose of passing upon the sufficiency of the bill, if amended, as it probably could be in regard to notice of the orator's rights, we shall consider it as though the amendments were made. The parties have desired us so to treat it.

The orator's contention is that he has a right in equity through Calvin Harman, from whom, in part, at least, all parties to the bill derive title to their interests in the water power and water rights, to compel those interested in that power connected with the grist mill, and with the starch factory to contribute towards the expense of putting in a new dam, in the same proportions which Calvin Harman if alive and still owning the saw mill and its privileges could have compelled them. Granting for present purposes, without conceding it, that the orator has succeeded to the rights of Calvin Harman in this respect, could Calvin Harman have compelled the owners of the grist mill property and of the starch factory property to contribute towards building a new dam across the river at that point, in case the old dam should be swept away? We think not. By accepting the property under the deeds from Calvin Harman the grantees did not directly nor impliedly covenant nor agree to contribute towards building a new dam in case the old one should perish or be swept away. They only covenanted, or agreed to contribute towards the expense of keeping the existing dam in repair. This is all the record of Harman's deeds of these rights would notify subsequent

purchasers that the grantees had agreed to do. An agreement to contribute toward the building of a new dam is a different thing and involves different considerations from an agreement to contribute toward the expense of keeping an existing dam in repair. The former would be for all time during which, by change of conditions and circumstances, the property might have no use, or no profitable use for the water rights, and might involve large expense. The latter would ordinarily involve much less expense, be limited in duration, and leave the owner of the property the right to elect whether he would further use the power and so make himself liable to contribute towards its creation and maintenance. Equity does not make contracts for parties, it only enforces those made by them. It does not treat such contracts between prior grantor and grantee, in regard to the use of property, as the personal obligations of subsequent owners, but treats the property as charged with the expenses incurred in accordance with such contracts. Pom. Eq., *supra.* The English courts of equity confine relief to such portions of those agreements as are restrictive of the use of the property, and refuse relief when the payment and expenditure of money is required. *Whittenton Mfg. Co.* v. *Staples,* 29 L. R. A. 500 and cases cited in opinion. But in United States generally relief is granted against assignees which involves the doing of positive acts and the payment of money. *Whittenton Mfg. Co.* v. *Staples, supra.* The ground on which equity furnishes relief, being that, an action of law might not be available because the agreement might not be a technical covenant running with the land, inhibits the court from enlarging, in the least, the fair scope of the original agreement when applied to the circumstances and the property. We think it is clear that Calvin Harman against his grantees of the grist mill premises and the starch factory premises, if they were now alive and owning the property, had no agreement with them, to contribute towards the expense of erecting a new

dam, if the one existing at the time of the conveyances should be swept away, much less has the orator against the assignees of such grantees. The orator does not, on any principle in law or in equity stand so related to the conveyance by Cleveland to Aldrich & Burbank and to the conveyance by Taylor to Hays that he can take advantage of the clauses inserted therein in regard to building a new dam or keeping the dam. As concerns the orator those were provisions which apply between the grantors and grantees in those deeds. On these views the orator, on the facts set forth in his bill, if amended as indicated, would have no right to the relief prayed for against the owners of the grist mill and owner of the starch factory premises.

(2). Has the orator any equitable right arising from the conveyances set forth in the bill to compel the owner of the saw mill premises and rights to contribute toward building the new dam? By his deed to Benjamin F. Herbert Calvin Harman could not impose, and did not undertake to impose, the burden of any easement upon that portion of the common water power and water rights which he had before conveyed with the grist mill and starch factory premises. The description of what that deed conveys is peculiar and should receive attention. It reads: "The right of drawing water from the dam across Black river just above Bean's clothier shop for the purpose of doing all things that may be done by water power in carrying on the tanning and dressing of leather, provided at all times that said water shall not be used for any other purpose nor to the injury of privileges granted heretofore for other purposes." The privileges before granted by Harmon were the grist mill and starch factory privileges. The privilege granted by the deed was not to create a burden upon such privileges, and so become an injury to them. Notwithstanding the deed in the granting part speaks of the premises as "a certain piece of land," the thing described as granted is *the right of drawing water from the dam*, clearly an easement as

characterized by the orator in his bill. The deed conveys nothing more,—no land—nor does it limit the place whereon the water taken is to be used. From the deed the easement granted cannot be determined to be an appurtenance to any other particular premises. From the record of the deed no subsequent purchaser of other rights in the water power would receive actual or constructive notice that the right granted was an appurtenance of any certain premises. It was an easement to which by the terms of the grant *the dam* then in existence was servient, and only to the extent the grantor was owner thereof. The dam existing was subject to decay and to destruction by decay, or by being swept away by the water. The easement arose from the power created by that dam. It was an easement or right to use for service a structure which of itself was perishable. The grant by Harman to Herbert of this right forever was a grant of it only so long as it continued in existence. It was not unlike the grant of a way through a part of a building which one owns, to another part of the same building which the grantee has the right to use. When the building decays or is destroyed by fire no grant to rebuild it would be raised by implication. The deed says nothing in regard to Harman, or his heirs or assigns being obliged to replace the existing dam by a new one when it should from any cause cease to exist, and no implication arises of such an obligation. It is clear that no such obligation was intended to be incurred. The consideration for the deed as expressed therein is only ten dollars. A covenant or agreement never arises by implication out of a transaction against the intention of the parties to it. The right to take water is neither *land* nor *tenement* and covenants made in conveying such right are not covenants which run with the land, and are not available, at law, to the assigns of the covenantee. *Mitchell* v. *Warner*, 5 Conn. 515, in which the question is fully considered. By such conveyance the grantee acquires

only an incorporeal hereditament.   Gould on Waters, § 299; *Tuttle* v. *Harry*, 56 Conn. 194;  *Watuppa Reservoir Co.* v. *MacKenzie*, 132 Mass. 75.

By the deed from Harman to Benjamin F. Herbert, the latter, his heirs and assigns acquired the right to take water for the purposes named from the then existing dam only so far as the grantor, or his assigns had rights therein and could become thereby obligated.   *Linthicum* v. *Ray*, 9 Wall. 241 : 19 L. C. P. Co. 657.   Hence the bill on the basis on which it is drawn and seeks relief is insufficient.

(3).   What right to use the water from the present dam in his tannery arising from the fact that he was allowed to rebuild the dam under his arrangement with Mrs. Field under a claim of the right, and what rights, in equity, he has to require contribution towards the expense of rebuilding the dam of those owners who are using the power thereby created, under our decisions, especially under *Hill* v. *Shorey et al*, 42 Vt. 614;  *Webb* v. *Laird*, 59 Vt. 108 and *Tullar* v. *Baxter*, 59 Vt. 467; and how his agreement with Mrs. Field may effect his equitable rights against the mortgagees of the grist mill and its water rights, we have not considered and do not decide.   The bill is not drawn with reference to a determination of his rights, if any, under such circumstances.

*The decree sustaining the demurrer and adjudging the bill insufficient affirmed, and cause remanded.*