FRANK P. PERCIVAL *v.* ENOS B. WILLIAMS.

May Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, and POWERS, JJ.

Opinion filed November 6, 1909.

Waters and Water Courses—Grant—Nature of Interest Conveyed—Dam—Repair—Easements—Abandonment — Easement in Gross—Attributes—Destruction of Servient Tenement—Estoppel by Deed—Prescription.

Where the owner of a dam and of the land and mill property on both sides of the stream conveyed the land and mill property on one side, together with the right to take and use water from the dam to run the machinery at all times except when there should not be water sufficient to run the mills on both sides of the stream, when the grantees should have the right to take the water one-third of the time, the granted right to take and use the water constituted an easement in the dam for the benefit of the mill property conveyed.

Mere nonuser is not conclusive of the abandonment of an easement created by grant; that is a question of fact depending on the circumstances.

The owner of an easement in a dam is entitled to make such repairs thereof as are essential to the full and proper enjoyment of his easement, but not to such extent as needlessly to increase the burden of the servient tenement.

A dominant tenement owner having an easement in a water power privilege which he had ceased to use for a considerable time is not entitled to repair the dam for the enjoyment of his easement so as to flow the lands of the servient tenement.

The grantor of land and mill privilege reserved to himself, his heirs and assigns the right to construct and maintain "in the mill building on the premises" a wheel to take water from the bottom of the flume through a specified aperture to drive the wheel, and to connect a force pump to pump water from the flume to the premises of a third person, with the right to lay suitable pipes to convey the water thereto. *Held*, that the easement was an easement in gross, which during its existence was an assignable, descendible, and devisable interest in the land itself, and so its validity was unaffected by the fact that the grantor at the time of its reservation had no interest in the premises of the third person.

The owner of an easement in gross created by a reservation in a deed was properly allowed to testify that he expected ultimately to become the owner of the property for the benefit of which the easement was created.

A deed conveyed a mill site with the buildings and water power, and reserved to the grantor, his heirs and assigns, the right to construct and maintain "in the mill buildings on the premises a wheel to take water from the bottom of the flume" through an aperture of specified size to drive the wheel, and to connect a force pump to pump water from the flume to the premises of a third person. The deed said nothing as to the repair of the flume or mill buildings, or as to their reconstruction if destroyed. *Held*, that the easement created by the reservation was in the mill buildings and the flume, and that it terminated on their destruction by a flood.

Where an easement in a mill privilege was extinguished by the destruction of the mill and flume the owner of the easement had no right to repair.

Where a deed reserved an easement in the granted mill privilege, and subsequent conveyances under which the orator acquired title were "subject to" reservations in the original deed, the words "subject to" were mere words of qualification, showing the grantor's purpose not to convey an absolute title, and thereby the orator was not estopped from interfering with defendant's alleged right to the easement after its termination by the destruction of the buildings and flume in respect of which it had existed.

No prescriptive right can be acquired by a use for a period less than fifteen years.

APPEAL IN CHANCERY. Heard on the pleadings and facts found by the chancellor at the March Term, 1909, Chittenden County, *Waterman,* Chancellor. Decree for the defendant. The orator appealed.

The bill seeks to enjoin the defendant from taking water by an aqueduct from the orator's flume and through his land to the premises called the Rawson farm, now owned by the defendant and his wife, and to restrain the defendant from repairing or rebuilding the flume, and the dam across Brown's River on the orator's premises, causing the water to flood the orator's meadow, and prays that the dam be removed. The orator excepted to the ruling of the chancellor allowing the defendant to testify that at the time of the reservation in his deed to Frank Burton he expected ultimately to own the Rawson farm. The following is a map of the premises in question:

*L. F. Wilbur* and *V. A. Bullard* for the orator..

Defendant had abandoned his easement. No definite length of time is required to constitute abandonment—even one year is sufficient. *Owen* v. *Field,* 102 Mass. 104. A nonuser for a short length of time will extinguish the right or easement if the acts or circumstances *indicate* abandonment. 3 Kent. Com. 559 and note; *Ward* v. *Ward,* 14 L. & E. 413. In *Snell* v. *Levett,* 110 N. Y. 595, Earl, J. says, "a non-user of an easement for less than twenty years, when the abandonment has been acted on by the owner of the servient tenement so that it would harm him if the easement was thereafter asserted will operate to extinguish it"; and the court said the facts showed an abandonment as a matter of law.

The claimed easement to take water from the orator's flume through the orator's premises to the Homer Rawson farm and buildings, is based upon a clause in the defendant's deed to Frank P. Buxton of March 10, 1892. This clause is a reservation and not an exception. There is a clear distinction between the two. An exception is to retain in the grantor some portion of his former estate which is excluded from the grant. *Robert* v. *Robertson,* 53 Vt. 692; *Wood* v. *Boyd,* 13 N. E. 478; *Ashcroft* v. *Railroad Co.* 126 Mass. 196. A reservation creates some new right in the grantor that did not before exist. A reservation cannot vest any right in a stranger to the deed. *Murphy* v. *Lee,* 144 Mass. 376, and cases there cited. 11 N. E. 552. And the easement or right reserved must be appurtenant to the land conveyed. *Trudeau* v. *Field,* 69 Vt. 454; *Mitchel* v. *Warner,* 5 Conn. 515; 14 N. E. 281; *Lithicoum* v. *Ray,* 9 Wall. 241; *Tuttle* v. *Harry,* 56 Conn. 194; 132 Mass. 75; *Ackroyd* v. *Smith,* 10 C. B. 164; Gould on Water, §289. And it follows as a necessary sequence that the grantor cannot exercise the rights reserved in the deed for the benefit of any other land or estate not appurtenant to the land conveyed, or to a stranger. *Smith* v. *Porter,* 10 Gray 66; *Davenport* v. *Lamson,* 21 Pick. 72. Nor can an easement be reversed distinct from the premises conveyed. *Reise* v. *Enos,* 76 Wis. 634, 8 L. R. A. 617. It is well settled that a deed must be construed most strongly against the grantor in favor of the grantee. *Mills* v. *Catlin,* 22 Vt. 98. Restrictions on the use of property held by a grantee in fee are not favored. *Eckhart* v. *Irons,* 20 N. E. 692. Running water is not a subject of a grant

or reservation. *Owen* v. *Field*, 102 Mass. 104. Nor is it a product of the soil. 48 Me. 83. If there could have have been a permanent right given by the defendant to convey water from the river to the Rawson farm not appurtenant to the land conveyed, or to a stranger, it could only be given by deed duly executed. *Curtis* v. *Noonan*, 10 Allen 409; *Bullen* v. *Runnels*, 2 N. H. 255; *Foster* v. *Browning*, 4 R. I. 47; *Mumford* v. *Whitney*, 15 Wend. 380; *Wolfe* v. *Frost*, 4 Sandf. 99; *Selden* v. *Del. & Hud. Canal Co.*, 29 N. Y. 634; *Clark* v. *Glidden*, 60 Vt. 706; *Morse* v. *Copeland*, 2 Gray 302. The reservation in the deed to Frank P. Buxton to take water from the flume and through pipes laid in the ground gives no right in the soil. It is simply a use. *Clark* v. *Glidden, supra;* 102 Mass. 90; *Thorn* v. *Wilson*, 11 N. E. 231; 24 Peck 106; 2 N. H. 255. So we come to this: that a reservation of a right in favor of one not a party to the deed, to land not appurtenant, is void. *Hall & Co.* v. *Dresser*, 46 N. E. 420; *Hornbrick* v. *Westbrook*, 9 Johns. 74, 20 L. R. A. 631; *Murphy* v. *Lee*, 11 N. E. 550; 4 New Eng. 202; *Wickham* v. *Hawker*, 7 Mees & W. 63; *Keppel* v. *Bailey*, 2 Myl. & K. 517. The reservation was not a condition or a covenant.

In order to have the reserved easement valid there must be a dominant and a servient estate. *Wagner* v. *Hanna*, 38 Cal. 111; *Kimball* v. *Ladd*, 42 Vt. 747; *Petition of Young*, 11 R. I. 636; *Ackroyd* v. *Smith*, 7 E. C. L. 164; *Reise* v. *Enos*, 76 Wis. 638; *Manning* v. *Wasdale*, 31 E. C. L. 758; *Badger* v. *Pierson*, 45 N. Y. 601.

The defendant has no easement or right to take water from the orator's flume and through his land to the Rawson farm by virtue of the reservation in his deed to Buxton. If he ever had such a right in the old flume under the mill it came to an end and was extinguished when the flume, bulkhead, water wheel, and mills on the south side of the river were destroyed in August, 1892. *Trudeau* v. *Field*, 69 Vt. 446; *Perley* v. *Crabb*, 37 N. E. 130; *Sherred* v. *Cisco*, 4 Sand. 485; *Patridge* v. *Gilbert*, 15 N. Y. 601; *Thorn* v. *Wilson*, 11 N. E. 230; *Hahn* v. *Baker Lodge*, 21 Ore. 30; *Baldwin* v. *Aldrich*, 34 Vt. 526; *Clark* v. *Glidden*, 60 Vt. 702; *Crooker* v. *Bragg*, 10 Wend. 266.

The owner of a servient estate is under no obligation to rebuild or repair structures needing repair or rebuilding. *Walker* v. *Pierce*, 38 Vt. 94; *Harmon* v. *Roberts*, 23 N. E. 443; 31 N. Y. 326; 2 Wash. Real Prop. 311; 2 Hill Real Prop. 101.

*C. S. Palmer* for the defendant.

Rights of riparian owners cannot be lost by failure to make use of them. *Mason* v. *Horton*, 67 Vt. 226; 2 Farnham on Waters, 1601, 1760; *Whitney* v. *C. M. Co.*, 151 Mass. 396; *Pillsbury* v. *Moore*, 44 Me. 154; *Moore* v. *Hutchinson*, 9 Vt. 242.

The defendant, to make useful his reservation of water on the south side of the stream to the "Rawson Farm," had the clear right to enter upon and keep in repair the dam, for that purpose, entirely independent of his right as owner of the water power on the north side of the river. *Hill* v. *Shorey*, 42 Vt. 614; *Webb* v. *Laird*, 59 Vt. 108; *Tullar* v. *Baxter*, 59 Vt. 467.

The reservation in the deed from defendant to Buxton was such that defendant had the right to take the water to the Rawson farm though he did not then own it. *Bowen* v. *Connor*, 6 Cush. 137; *Newell* v. *Hill*, 2 Met. 180; *Goodrich* v. *Burbank*, 12 Allen, 459; *Ford* v. *Morris*, 101 Mass. 68; *Hawkey* v. *Clark*, 110 Mass, 262; *Amidon* v. *Harris*, 113 Mass. 59.

The language of the reservation in the deed from defendant to Buxton only limits the quantity of water to be used, not the manner of its use. *Adams* v. *Warren*, 23 Vt. 395; *Rood* v. *Johnson*, 26 Vt. 64; *Miller* v. *Lapham*, 44 Vt. 416; *Albee* v. *Huntley*, 56 Vt. 454; *Hartford Woolen Co.* v. *Bugbee*, 76 Vt. 61.

WATSON, J.   Before and on the 16th day of December, 1872, B. C. Buxton was the common owner of the two properties in Jericho: the land and mill privilege and water rights connected therewith on the south side of Brown's River and east of the highway, now owned by the orator, and the land, mill privilege and water rights connected therewith on the north side of the river and west of the highway, now owned by the defendant. During said Buxton's ownership of both properties the present dam was in existence as a part of the property on the south side of the river, and the sawmill and gristmill on that side were operated by water therefrom.   There were also mills on the piece of land on the north side, which were being operated by water taken from the dam near the north end by a wooden tube leading from the dam, under the bridge, to the mills.   The mills on both sides of the stream were in active operation when the properties were separately sold and conveyed by him as hereinafter stated.   On December 16, 1872, he conveyed the "land,

mills and privilege'' on the north side to Thomas H. Buxton and Charles H. Williamson, and as part of the description the deed contained the following: ''and the right to take and use water from the dam above the road for running wheel and machinery on said premises at all times except when there shall not be water for running the mills on both sides of the stream and in such case, the right to take water one-third of the time, and the grantees of this deed to be at one-third of the expense of keeping up the dam except twelve feet of it on the south end of the same.'' The right to take and use water as there granted is an easement in the dam, created for the benefit of the mill property on the north side of the river, then conveyed. *Trudeau* v. *Field,* 69 Vt. 446, 38 Atl. 162. The same property and water rights, through sundry mesne conveyances, came to the defendant by deed dated January 17, 1906. In August, 1892, the mill or shop buildings, and the machinery and water wheel connected therewith, on the dominant tenement, together with the tube that took the water from the dam to those shops were all swept away and destroyed by a flood. The shops and tube have never been rebuilt, nor the machinery or water wheel replaced. It is contended by the orator that the easement has been abandoned, and consequently that the defendant has no right in the dam, nor to take water therefrom under the provisions of the deed of December 16, 1872. The easement was created by grant, and whether the right thereto had been abandoned was a question of fact depending on the circumstances of the case. Non-user was a fact to be considered in determining it, but not in itself conclusive of an abandonment. *Congregational Society* v. *Stark,* 34 Vt. 243; *Mason* v. *Horton,* 67 Vt. 266, 31 Atl. 291, 48 Am. St. Rep. 817; *Sowles* v. *Minot et al.,* 82 Vt. 344, 73 Atl. 1025. The record shows that the chancellor was unable to find such abandonment, but to the contrary does find that the defendant intends to preserve his rights as to the water privilege.

May 10, 1873, the property on the south side of the river, including the mill privilege, the water rights, and about six acres of land connected therewith, with the appurtenances thereof, was conveyed by B. C. Buxton and wife to John Early and James Gribbin, the deed containing the following: ''this conveyance is made with the condition that the owners of· said sawmill are to build and keep in repair twelve feet of the dam adjoining the mill and two-thirds of the remainder of said dam,

and in case of insufficiency of water to run the mills or machinery on both sides of the stream, the owners of said sawmill shall have the right to use the water two-thirds of the time.'' This property including the mill privilege and water rights as thus conveyed came from the above named grantees, through several mesne conveyances, to the defendant by deed dated October 22, 1891. On the 10th day of March, 1892, the defendant conveyed the same property and property rights to Frank P. Buxton, in which conveyance the premises are described in part as bounded on the south by land of Homer Rawson, and the deed contains a reservation as follows: ''But I hereby expressly reserve to myself, my heirs and assigns, the right to construct and maintain in the mill buildings on the premises, a wheel and take water from the bottom of the flume through an aperture two inches by three inches in size, to drive said wheel and connect therewith a force pump or other apparatus to pump water therefrom to the dwelling house and premises of said Rawson, and also the right of laying in a suitable way and maintaining thereafter suitable pipe from said mill to and across the lands here conveyed to the premises of said Rawson to supply the same with water.'' All subsequent conveyances of this property down to and including the conveyance to the orator, October 3, 1905, were in terms made subject to the above reservation. In August, 1892, all the mill buildings including the gristmill and sawmill, the wheel which operated them, the flume, and power house, together with all the machinery, on the south side of the river were washed away and destroyed by the same flood that washed away and destroyed the mill and shop buildings, machinery, etc. on the north side of the stream, as before stated. Some new buildings—box factory and sawmill—were erected on the south side in the fall and winter following; also a new flume and bulkhead were built and another wheel put in. But neither the new buildings, nor the new bulkhead and flume, were built on exactly the same site of the old. In January, 1900, all the buildings were destroyed by fire, and part of the flume was burned. The bulkhead was not much damaged, and the dam and wheel were practically uninjured. The wheel was afterwards taken out by the orator's immediate grantor and never replaced. No abandonment of the water privilege on the south side of the river by those owning it previous to the orator is found; but the orator does not intend to erect buildings for mill

purposes, nor to keep the dam, flume and bulkhead in repair for use; and if the dam were removed there would be about three acres of land now covered by the pond or rendered wet and swampy by it which could be cultivated or used for meadow or hay.

At the time the reservation was made by the defendant in his deed of March 10, 1892, his father-in-law, Homer Rawson, was the owner of the Rawson farm mentioned therein. Rawson died in 1900. The defendant and his wife became the owners of the farm in February, 1906. It is not found that Rawson had any authority from the defendant to act under the provisions of the reservation, nor that he did in fact act, or claim to act, under it, but it is found that in 1893, with the defendant's knowledge, and without objection by the owners of the mill property he put in a water wheel and pumping apparatus, cut an aperture two by three inches in the new flume, laid pipe across the mill premises and across his own land and thereby commenced taking water for use at his farm buildings and premises; from which time hitherto the water has thus been taken, conveyed, and used by the owners, tenants, and occupants of the farm for domestic purposes and watering stock.

From the description given, the dam seems to be what is commonly known as a log dam. In the spring of 1906 there was a break in it, causing a hole through which the water was escaping, so that the pump used for forcing water to the Rawson farm would not run. The break was temporarily repaired by the defendant so the pump would run, and such repairs were made at various times between February and August of that year. In the latter month he made preparations for making more permanent repairs upon the dam, noticing which the orator asked him what he was going to do, and on being told forbade his making further repairs. The defendant claimed to own one-third of the dam and that he had a right to repair it. At another time defendant informed the orator that the dam was out of repair, that he was going to repair it, and if the orator did not assist him he should make the repairs and call on the orator to pay his share of the expense. The orator, in writing, forbade the defendant's repairing the dam, or the bulkhead and flume, as to do so would cause the water to set back upon and overflow orator's land causing it to be wet and swampy, and thereby an injury to his crops which may grow thereon. Soon

thereafter the defendant made the repairs, but in so doing did not raise the top of the dam from what it was before. The defendant made these repairs, temporary and permanent, for the purpose of maintaining the height of the water so that under the reservation he might furnish water for the Rawson farm then and now owned by himself and wife; and also for the purpose of asserting and maintaining his rights in the dam and water privilege in connection with his mill-site on the north side of the river. Regarding the latter ground, the defendant as owner of the dominant tenement had and has the right to make all such repairs upon the dam as are essential to the full and proper enjoyment of the easement granted. Webb v. Laird, 59 Vt. 108, 7 Atl. 465, 59 Am. Rep. 699; Hill v. Shorey, 42 Vt. 614. Still he can do this only when necessary to such enjoyment, and in such a manner as not needlessly to increase the burden on the servient tenement. Joseph v. Ager, 108 Cal. 517, 41 Pac. 422. When there is a cessation of user for any considerable length of time, as in the case before us, such right of repair does not include the right to hold water in the dam to a height that will cause damage to the servient owner by setting back upon or overflowing his land. To permit the dominant owner thus to control the flow of the water when not necessary to secure to himself the fullest enjoyment of his servitude would be to impose an additional burden upon the servient tenement, which he cannot do. Gale on Easements, 475. "The existence of an easement does not confer any right on the grantee that the owner of the servient tenement should not use his land in any way which is not inconsistent with his enjoyment of the easement"; and "if the owner of an easement exceeds his rightful enjoyment, or does anything which would after long user produce an increased right, the servient owner may in all cases obstruct or prevent the excessive enjoyment, or the user of the thing which would enable the dominant owner after a time to claim an increased right." Goddard on Easements, 280, 281; Holden v. Shattuck, 34 Vt. 336, 80 Am. Dec. 684; Cole v. Drew, 44 Vt. 49, 8 Am. Rep. 363.

Whether under the grants any part of the expense attending the repairs made by the defendant should be borne by the orator is a question not presented; and the right to construct, or of easement in, a new dam is not involved.

As respects the other ground upon which the repairs were made, it is contended by the orator that the reservation under which the defendant claims the right to take and convey water to the Rawson farm is without force, because at the time of making it the defendant owned no interest in the farm, and consequently there was no dominant tenement, an essential to an easement. The easement created by the reservation, however, is not an easement appurtenant, but an easement in gross where there is no dominant tenement; and during its existence it is an interest in the land itself, and is assignable, descendable, and devisable. *Lawrie* v. *Silsby,* 76 Vt. 240, 56 Atl. 1106, 104 Am. St. Rep. 927. In that case the orators took water from a natural water course on the land of the only one of them who was a riparian, and conveyed it to their several farms and buildings for domestic and farm uses.    The bill was brought against an upper riparian proprietor to restrain the pollution of the stream, and for damages.    It was contended in defence that of the orators none other than the one riparian had any rights incident to riparian ownership, thus raising the question whether such other orators could maintain the bill in their own names.    It was held that the orators had no prescriptive right so to take water as against the defendant; but that those not riparian had acquired such right against the owner of the lot in which the water was taken, and that such right is an easement in gross, an interest in the land itself, and is assignable, descendable, devisable; and therefore that those orators, as well as the one riparian, could maintain the bill in their own names if their rights had been infringed.    In *Goodrich* v. *Burbank,* 12 Allen, 459, 90 Am. Dec. 161, the reserved right to the grantor, his heirs and assigns forever to take water from a spring by pipe and upheld as an easement in gross, was held to be limited to no particular premises, capable of being used upon any land which he or they might at any time acquire, an assignable and inheritable interest not annexed to any parcel of land.    In *French* v. *Morris,* 101 Mass. 68, the bill was to restrain the defendant from interrupting the plaintiff and his tenants in the enjoyment of a right to take water from a well on defendant's land under a reservation made by the plaintiff's grantor to itself, its successors, or assigns, in a deed to the defendant's grantor.    The right reserved was the free access at any and all times to a well on the premises to take and use the water thereof; subject however to the right of grantee

to use water from the same well for the dwelling house or houses built or owned by him on the premises. The defendant denied the right of the plaintiff and his tenants to take and use the water and to enter upon his premises for that purpose, and had prevented them from so doing. It was held that the right reserved was in gross, valid as to the assigns of the grantor, and that the defendant had no right to interrupt those who came for water by virtue thereof. To the same effect is *Owen* v. *Field,* 102 Mass. 90.

The case of *Amidon* v. *Harris,* 113 Mass. 59, is much in point. There by indenture Charles Negus conveyed to Rufus Amidon, his heirs and assigns, the right to draw and take so much water from the spring mentioned as was or should be necessary for the supply of the families resident in the house described as owned by Amidon, so long as the water should run from the spring through the main pipe. Amidon did not at the time of the indenture, nor afterwards, own the premises on which the house stood, but occupied them with his wife, the plaintiff, who held them in fee in her own right. The defendants, who had become the owners of the estate of Negus subject to all the rights conveyed to Amidon, contended that the indenture conveyed an easement appurtenant to the estate of Amidon in the premises; and that, as his estate expired with his life, so did the easement. It was held that the right conveyed was an easement in gross, and that the use of the water was restricted to the particular house occupied by the plaintiff. The court said that such a right may be conveyed without being restricted to a particular locality; but its character is not changed by reason of a restriction in this respect. "A man may purchase such right restricted in its use to a particular house or mill; he may do this in contemplation of owning or of building a house or mill, and when he does so, the easement to take the water becomes annexed to the house or mill, or in other words may be availed of to the extent granted."

From what is said in the case last noticed it would seem clear that the defendant was properly allowed to testify that at the time he made the reservation in question he expected ultimately to become the owner of the Rawson farm, although no such fact is found. See also *North British Ry. Co.* v. *Park Yard Co., Ltd.,* [1898] A. C. 643.

It is further contended that when the flume, bulkhead, water wheel, and mills were washed away and destroyed in August, 1892, the easement in gross was extinguished. Whether this is so or not depends upon the meaning and effect of the reservation creating it. When the deed containing the reservation was executed the mill stood partly over the edge of the water of the stream at the south end of the dam; with a power house and a flume running from the south end of the dam down the river and under the mills, from which water was taken to run the wheel that operated both mills. The descriptive part of the deed contains a boundary of the land and premises conveyed, concluding with the words, "with all the buildings thereon standing, including the mill buildings thereon." Then follows the reservation: "But I expressly reserve to myself, my heirs and assigns the right to construct and maintain in the mill buildings on the premises, a wheel, and take water from the bottom of the flume through an aperture two inches by three inches in size, to drive said wheel, and connect therewith a force pump or other apparatus, to pump water therefrom to the dwelling house and premises of said Rawson," etc. Nothing is said therein about keeping the flume or mill building in repair, nor touching the building of new ones in case those then in existence should be destroyed by fire or water. And yet the likelihood of a contingency requiring either, if the reserved right is without the limitation claimed by the orator, must have been well known to both parties when the deed was executed. The water was not expected to run from there to the farm by force of gravity. Without ambiguity or uncertainty in language the place and manner of taking it is definitely fixed as *in the mill on the premises,* from the flume, by means of a force pump or other apparatus therein to be run by a wheel constructed and maintained there driven by water taken from the bottom of the flume through an aperture of specified size, and the right of laying and maintaining pipe to convey the water to the Rawson farm is "from said mill." The easement was in the mill buildings and the flume, and the deed contains nothing showing an intention by the parties that it should survive the existence of the mill buildings and flume then on the premises. In *Woodcock* v. *Estey,* 43 Vt. 515, both parties derived title from a common source, and their respective rights to the spring in question depended upon the construction of a certain deed which, as was held, did not

operate to convey the spring and the land about it for three rods each way. The plaintiffs claimed damages occasioned by the defendant's digging and laying an aqueduct on their land outside the limits reserved. For such injury the court below held the plaintiffs might recover, and it was affirmed by this Court. Thereon the Court speaking through Ross, J., said that where the parties to the deed have not fixed upon any place for conveying the water from the spring, the law interprets the grant to give a proper and reasonable place for conveying away the water; but when the parties have interpreted and limited the grant and fixed the place for conveying the water from the spring, there is nothing left for interpretation or implication by the Court, and the Court have only to enforce the grant as agreed upon by the parties. In *Trudeau* v. *Field,* cited above, the common grantors, Calvin Harman and D. W. Harman, owned land on both sides of Black River in Coventry, on which there stood a saw mill and a grist mill operated by a water power created by a dam across the river immediately above the saw mill. Calvin Harman, alone, conveyed to Benjamin F. Herbert, his heirs and assigns, forever, ''the right of drawing water from the dam across Black River just above Bean's clothier shop for the purpose of doing all things that may be done by water power in carrying on the tanning and dressing of leather, provided, at all times, that said water shall not be used for any other purpose, nor to the injury of privileges granted heretofore for other purposes.'' The privileges before granted by Harman were called the grist mill and starch factory privileges. The orator became the owner of the water rights of Benjamin F. Herbert. The dam then in existence was swept away and rebuilt mostly by the orator. One question was whether the orator had any equitable rights arising from the conveyances set forth in the bill to compel the owner of the saw mill premises and rights to contribute toward building the new dam.

The Court said ''The thing described as granted is *the right of drawing water from the dam,* clearly an easement as characterized by the orator in his bill, \* \* \*. It was an easement to which by the terms of the grant *the dam* then in existence was servient, and only to the extent the grantor was owner thereof. The dam existing was subject to decay and to destruction by decay, or by being swept away by the water. The easement arose from the power created by that dam. It was an easement or right to use for service a structure which of itself was perishable.

35

The grant by Harman to Herbert of this right forever was a grant of it only so long as it continued in existence. It was not unlike the grant of a way through a part of a building which one owns, to another part of the same building which the grantee has the right to use. When the building decays or is destroyed by fire no grant to rebuild it would be raised by implication. The deed says nothing in regard to Harman, or his heirs or assigns being obliged to replace the existing dam by a new one when it should from any cause cease to exist, and no implication arises of such an obligation. It is clear that no such obligation was intended to be incurred.''

*Linthicum* v. *Ray,* 9 Wall. 241, 19 L. ed. 657, was an action on the case for obstructing the plaintiff in the use of a wharf. The plaintiff asserted a right to its use under various mesne conveyances from Francis and Charles Lowndes. In 1804 the two Lowndes conveyed certain land by deed, and also to the grantees, their heirs, and assigns the privileges and rights of using the wharf built ''by the Lowndes,'' free of expense, etc. Before the grievances complained of were committed, the wharf which existed in 1804 had perished, and a new one was constructed in its place by the defendant. The Court said the deed contained no provision for keeping the wharf in repair, or for building a new one in case of its destruction, or any clause indicating an intention to confer any right or privilege of greater duration than that of the structure then existing. It was held that the words granting the use of the wharf referred clearly to the structure then in existence; that the right was not attached as an incident to any estate; and that it passed by a grant in gross, and was necessarily limited in its duration by the existence of the structure with which it was connected.

In *Bartlett* v. *Peaslee,* 20 N. H. 547, 51 Am. Dec. 242, one Jacob Peaslee in 1822, conveyed to the plaintiff certain lands, in the description of which a certain corn mill was named in the deed, and after the description a clause was added as follows: ''Also, a privilege for the said Jonathan Bartlett to grind all his own corn in the above mentioned corn mill.'' The plaintiff enjoyed his right to grind at the mill till the year 1841. After that time the mill was not in fit condition for use, and was taken down by the defendant in 1845, without the plaintiff's consent. The action was case for neglect to keep the mill in good and sufficient repair for grinding corn, by reason of which the plain-

tiff lost the benefit of his privilege. In the court below the plaintiff recovered. Granting a new trial, the court of last resort said it did not appear that the plaintiff had not enjoyed his grant to the full extent in which it was made to him; that the right to grind corn in a mill is in its nature determinable with the existence of the mill itself.

We hold therefore that when the mills and flumes were washed away and destroyed in August, 1892, the defendants' easement in gross was extinguished; and being altogether extinguished it could not revive. Goddard on Easements, 475. The right of repair existed only as an incident to the principal easement and consequently ceased with it. Gale on Easements, 496.

It is urged however that since the conveyance to the orator was by the deed made subject to the same reservation here under consideration, he is estopped from interfering with the defendant in the exercise of his right thereunder. It is true that the orator took his deed in express terms "subject to the reservations set forth in deed given by" the defendant March 10, 1892, making reference to that deed for a more particular description of the reservation; and the two intervening conveyances were also in terms "subject to the same reservations set forth in" the deed of March 10, 1892. Each of those subsequent conveyances was by a warranty deed poll with the usual covenants. None of the grantors had any interest in making such subjection except as it might be necessary for his own protection under the covenants of his deed; and certainly it was not a provision for the benefit of the grantees. The words "subject to" as there used are words of qualification showing a purpose of the grantor not to grant a title absolute, but a title subject to the rights reserved in the deed referred to. Each deed fairly shows that the intention of the parties was to have it show the true state of the title, and therein the nature, source, and extent of the incumbrance to which the property was liable. They did not intend to give the reservation, subject to which the conveyance was made, any force or meaning beyond that given by the deed containing it, whatever such force or meaning might be (see *Wolveridge* v. *Steward,* 1 Cr. & M. 644, 30 E. C. L. 521; *Johnson* v. *Webster,* 4 D. G. M. & G. 474, 53 Eng. Ch. 371), and the various grantees including the orator were bound by that deed only to the extent of its obligation. The orator is therefore not precluded from

claiming that by fair construction the rights reserved had become extinguished by the inherent limitation of the grant itself before he took conveyance of the property. *Blake* v. *Tucker,* 12 Vt. 39.

As a wheel and pumping apparatus were first installed and pipe laid to convey water from the flume to the Rawson farm in 1893,—less than fifteen years before this suit was brought,—no prescriptive right thus to take and use water can be claimed.

Whether the defendant has any rights under a license from the owner of the mill property on the south side of the river to Homer Rawson at the time Rawson installed his wheel and pumping apparatus and laid pipe to take and conduct water from the flume to the Rawson farm in 1893, we do not consider. The defence is not put upon that ground by the defendant's answer, and the facts found are insufficient for the proper determination of such equities between the parties, if any there are.

*Decree reversed and cause remanded with directions that a decree be entered in conformity with this opinion; provided that if the defendant shall obtain leave so to amend his answer as to permit him to stand upon his rights, if he have any, under a license from the owner of the mill property on the south side of the river to Homer Rawson at the time Rawson installed his wheel and pumping apparatus and laid pipe to take water from the flume to the Rawson farm in 1893, then to that extent and for that purpose the case to be retained and such further proceedings had as may be necessary for the determination of the equities between the parties growing out of such license, if any there are. This decree, however, is not to be construed as in any-wise determining whether leave thus to amend the answer can properly be granted. The orator to recover costs in this Court. Let the costs below be there determined.*