### Town of Newfane v. John H. and Linda A. Walker and Joseph L. and Dorothy Druke

[637 A.2d 1074]

No. 92-236

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed December 17, 1993

*J. Garvan Murtha* and *Richard C. Carroll* of *Kristensen, Cummings, Murtha & Stewart, P.C.*, Brattleboro, for Plaintiff-Appellee.

*Joseph J. O'Dea*, Manchester, for Defendants-Appellants.

**Morse, J.** Defendant landowners appeal from a superior court order permanently enjoining them from interfering with the public's use of the so-called Williamsville dam and swimming hole area and declaring that plaintiff Town owns the property in fee. We affirm in part and reverse in part.

This is one in a series of cases, and the second to be decided by this Court, involving the public's right of access to and use of

the Williamsville swimming hole. In *Druke v. Town of Newfane*, 137 Vt. 571, 409 A.2d 994 (1979), the Drukes sought to limit public access across their land to the swimming hole. We upheld the superior court's finding that the access road had been dedicated to the public. *Id.* at 577, 409 A.2d at 996.

In 1987, a storm breached the dam, and the swimming hole, which was basically a pond created by water backed up behind the dam, disappeared, leaving a bed of gravel. Believing that the dedication found in *Druke* was an easement that was extinguished when the pond ceased to exist, landowners renewed their efforts to limit public access to the area by posting no trespassing signs and opposing efforts to repair the dam. The superior court enjoined them from doing so, declaring that the entire length of the stream bed forming the southern border of landowners' property, not just the right of access to the stream, had been dedicated to the public to the high water mark and that the Town of Newfane held the property in fee simple. Landowners appeal these determinations and additionally contest the court's interpretation of their deeds, setting the boundary of their property at the northern high water mark of the stream.

Since at least 1786, a gristmill has existed on the property now owned by defendants Walker. In 1839, the mill was rebuilt and operated by William H. Williams. By 1898, the entire gristmill property, including land both north of the stream, now owned by landowners, and south of the stream, now owned by the Town, was owned by John W. and Fanny C. Williams. During the Williams' ownership, the general public enjoyed full use of the dam area, including the right to swim, fish, picnic, draw water for farm animals, cut and remove ice, and gather gravel from the stream bed.

In 1943, John Williams sold the mill buildings and surrounding lands north of the stream to Michael Fitzmorris. The deed described the property conveyed as

> Being the Williams Mill property, so-called, on Grist Mill Road consisting of the old gristmill and buildings pertaining thereto . . . but reserving from this conveyance the dam and water power rights formerly pertaining to said mill and a right of access thereto across premises herein conveyed

for the grantors, their heirs and assigns and the public generally.

By 1968, Fitzmorris had conveyed the gristmill property to Walter Zuk, the Walkers' predecessor-in-interest, and to defendants Druke. In 1975, Cheney Williams, John's son and heir, conveyed by quitclaim deed the land reserved to him, including the dam, water power rights, and a right of access, to the Town of Newfane. By the same deed, he also conveyed three parcels on the other side of the stream to the Town.

■ The trial court held, under a theory of dedication and by deed, that the Town owned title in fee simple to the dam area. We agree that the facts found by the court are sufficient to establish a dedication, but disagree about the nature and scope of what was dedicated. We hold that the Town received by dedication, and continues to hold, an easement over the dam property, which was not extinguished when the dam was breached.

■ The court's conclusion that the dam and swimming hole property had already been dedicated to the public by 1943 is supported by its findings and the record. Both the facts and the analysis here parallel those of *Druke.* "Dedication is the setting apart of land for public use, either expressly or by implication of law. It may be shown by the owner's writings, affirmative acts, acquiescence in public use, or some combination thereof, so long as the owner's intent to dedicate clearly appears." 137 Vt. at 574, 409 A.2d at 995. The court found that, at least since 1912, the public had actively and continuously made use of the waters both above and below the dam for a variety of activities, including fishing, swimming, skating, ice cutting, washing vehicles, sunbathing, and picnicking. John Williams, during the long period he owned the property, did nothing to discourage and much to encourage the public's enjoyment of it. He continued to repair the dam even after the mill ceased to function and the dam was no longer necessary to generate power. Here, as in *Druke*, the public's use of the land for more than forty years "for the purpose for which it was dedicated is in law equivalent to an acceptance" and completed the dedication. *Id.* at 576, 409 A.2d at 996.

Finally, here, as in *Druke*, the language in Williams's deed to Fitzmorris, reserving the "dam and water power rights" for

"the public generally," is further evidence of his intention to dedicate the swimming hole property. *Id.* at 575, 409 A.2d at 995. The dedication predated the deed. The deed did not create an interest in the public; it recognized a pre-existing interest in the public created by dedication. *Id.* at 576, 409 A.2d at 996.

Questions remain about the nature of the dedication, that is, what interest it conveyed to the public. Although we agree with the trial court that the swimming hole property and dam area have been dedicated, we do not agree that the dedication was a fee. A common-law dedication, unlike a more formal statutory dedication, does not pass fee simple; rather, it passes an easement to use the property in a manner consistent with the dedication. See, e.g., *Chester v. Gilchrist*, 497 A.2d 820, 821 (Md. Ct. Spec. App. 1985), *rev'd on other grounds*, 514 A.2d 483 (Md. 1986); *Town of Reydon v. Anderson*, 649 P.2d 541, 543 (Okla. 1982); *Boyd v. Hyatt*, 364 S.E.2d 478, 482 (S.C. Ct. App. 1988); see also *County of Bennington v. Town of Manchester*, 87 Vt. 555, 557, 560, 90 A. 502, 503, 504 (1914) (affirming that town dedicated courthouse to county but defining dedication as an easement only and holding that town retained fee interest in courthouse property). The theory underlying dedication is that owner-permitted use of private property by the public creates an "estoppel in pais," see *Druke*, 137 Vt. at 576, 409 A.2d at 996, that is, an expectation of continued use that estops the owner from preventing it. Use, not ownership, is the crux of dedication.

The dedication here was an easement, but the scope of the dedication, not the nature of the property interest it conveys, determines how the public may use the property. *Jacobs v. Lyon Township*, 502 N.W.2d 382, 384 (Mich. Ct. App. 1993). Although the chain of deeds from John Williams to Cheney Williams to the Town of Newfane reserved only the dam and water power rights, that is not the scope of the public's easement. The public's interest was never in the power the dam created and only incidentally in taking water from the stream. What the easement allows is public entry for the full range of uses—primarily recreational, but some utilitarian—for which the property was dedicated. It can reasonably be inferred that it was John Williams's intent to dedicate to the public the same rights

to access and use that it had enjoyed over the previous forty years.

In his 1943 deed to Fitzmorris, John Williams sold off the gristmill property but reserved a private easement to the dam and water power for himself and his heirs as well as the public. He continued to use that easement to maintain the dam, with the help of members of the public, long after the gristmill ceased to function and even after he no longer owned the grist-mill property, so that the public's recreational use of the property could continue. The easement thus clearly included the right to maintain the dam. The Williams family continued to share the easement with the public until Cheney Williams, John's heir, quitclaimed the easement, along with three parcels of land on the opposite side of the stream, to the Town of New-fane. The Town now possesses the easement, and with it, the right to maintain the dam.

Relying on *Trudeau v. Field*, 69 Vt. 446, 38 A. 162 (1897), *Percival v. Williams*, 82 Vt. 531, 74 A. 321 (1909), and *Inhabitants of Town of Sabattus v. Bilodeau*, 391 A.2d 357 (Me. 1978), landowners argue that the Town's interest was an easement in a structure only, not in the underlying land, and that interest was extinguished by the destruction of the dam. These cases are distinguishable. In *Trudeau*, the Court held that an easement for water rights to a dam did not imply that the owners of dam had agreed to rebuild it when it was swept away in a flood. 69 Vt. at 452-53, 38 A. at 164. Here, the Town wishes to reconstruct the dam, not to force the landowners to do so.

In *Percival*, the Court held that the reservation in a deed, allowing the grantor to construct and maintain a water wheel "in the mill buildings on the premises" and to pump water to a certain place, did not survive the destruction of the mill. 82 Vt. at 544, 74 A. at 325–26. More broadly, in *Sabattus*, the court allowed a landowner to demolish a dam on his property, despite the town's easement to draw water for its fire protection system, after the town's construction of a new reservoir rendered the need for the dam obsolete. The court held that the town's easement was an easement in gross, that is, in the structure and not in the underlying land, and therefore an inadvertent or even intentional destruction of the structure extinguished the easement. 391 A.2d at 359–60.

Here, the easement is not limited to the dam and water rights reserved by John Williams in the 1943 deed. Rather, the public has an easement by dedication, not only to use water power but to pursue a wide variety of activities in the area of the stream. It is an easement not only in the structure but also in the surrounding land. Although the loss of the dam restricts those activities, water and gravel may still be taken and some recreational uses remain. John Williams himself repaired previous breaches in the dam; the intent of the dedication survives a breach of the dam.

■ Moreover, none of landowners' cases involves a dedication. A dedication can be extinguished only if the public abandons it. 7 R. Powell, Law of Real Property § 926[3], at 84–107 (1992). Abandonment must be shown by a failure to use the property and an intent to abandon. *Marksbury v. State*, 322 N.W.2d 281, 287 (Iowa 1982). Nothing in the record suggests an abandonment has taken place here. Rather, the evidence shows that the public continues to use the dedicated area even in its current state and that the Town, on the public's behalf, seeks to continue the dedication by restoring the dam.

■ ■ Finally, landowners contend that the court erred in finding that the boundary of their property was located at the high water mark of the stream's north bank, thereby depriving them of any part of the stream bed. The court construed the chain of deeds (Williams to Fitzmorris to landowners) in this manner because they all described the boundaries of landowners' properties as going "along" or "to" the stream. Conveyances of land adjoining privately owned stream beds, however, are generally construed as a matter of law as going not to the high water mark but to the thread of the stream. 1 Waters and Water Rights § 6.03(a)(3), at 178 (R. Beck ed. 1991); see *Nilsson v. Latimer*, 664 S.W.2d 447, 449 (Ark. 1984) (longstanding property rule that absent an express reservation by grantor, a conveyance of riparian property conveys title to thread of stream unless contrary intention appears; description that land is bounded "along" or "to" bank is not sufficient to establish an express reservation); *Sheldon v. Sevigny*, 272 A.2d 134, 137 (N.H. 1970) (fact that deed runs by the bank of a stream does not limit conveyance to the bank in absence of clear expression

of intent to so limit grant). The trial court found nothing beyond the deed descriptions that would support a boundary at the high water mark.

*The ruling that the swimming hole property and dam area have been dedicated to public use is affirmed; the ruling that defendants' boundaries are at the high water mark of the stream is reversed.*