VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



ENVIRONMENTAL DIVISION
Docket No. 22-ENV-00018

| | |
|---|---|
| Ranney Dairy Farm, LLC<br>    Major Subdivision Appeal | **POST-REMAND MERITS DECISION** |

In this matter, Daniel Deitz, Steven Goulas, Sr., Veronica Goulas, Martha Moscrip, Nancy Pike, Michael Sylvester, and Teresa Sylvester (collectively, Neighbors), appeal a major subdivision permit issued by the Town of Westminster (Town) Development Review Board (DRB) to Ranney Dairy Farm, LLC (Applicant) for the subdivision of land that it owns at 700 Westminster West Road in Westminster, Vermont (the Property).

On November 6, 2025, following remand from the Vermont Supreme Court, the scope of which is discussed below, this Court held a one-day merits hearing in this matter via the WebEx videoconference platform. Neighbors and Applicant appeared and are represented in this matter through counsel. Applicant is represented by Samuel H. Angell, Esq. Neighbors are represented by Fletcher D. Proctor, Esq. The Town is represented by Lawrence G. Slason, Esq. The Town did not attend trial and notified the Court of its intended absence prior to trial. Following the close of evidence, the parties filed post-trial memoranda, due November 21, 2025, at which point this Court took the matter under advisement. The parties did not request a site visit following trial. The Court notes a site visit was conducted following the Court's initial merits hearing in this case, held in October 2023.

## Procedural History

In a December 8, 2023 Merits Decision, this Court initially resolved this appeal in favor of Applicant. In re Ranney Dairy Farm, LLC Major Subdivision Appeal, No. 22-ENV-00018 (Vt. Super. Ct. Envtl. Div. Dec. 8, 2023) (Walsh, J.). In that decision, the Court concluded that Applicant had demonstrated sufficient access to the proposed subdivision as required by 24 V.S.A. § 4412(3) and the Westminster Zoning Bylaws (the Bylaws) by making a "threshold showing" that it had a right to use Old Codding Road. Id. at 6. The Court explained that the "threshold showing" analysis was in recognition of the fact that this Court was without jurisdiction to adjudicate private property rights,

1

which resides in the Civil Division, but could undertake this narrow analysis to demonstrate requisite access. See id. Neighbors appealed that decision to the Vermont Supreme Court.

In an October 24, 2024 Decision, the Vermont Supreme Court concluded that this Court has jurisdiction to determine whether Applicant has a "permanent easement or right-of-way" that provides access to a public road as set forth in § 4412 and to determine whether Applicant had a residual right-of-way due to the road being public prior to its discontinuance. In re Ranney Dairy Farm, LLC Major Subdivision Appeal, 2024 VT 66, ¶¶ 10, 13, 14. The Vermont Supreme Court, therefore, reversed and remanded the matter "for a determination of whether applicant has established the existence of an easement or right-of-way over Old Codding Road.[]" Id. at ¶ 14. This included jurisdiction to "inquire into whether the road was ever laid out . . . ." Id.

In an August 5, 2025 Decision, this Court granted in part Applicant's motion for summary judgment, concluding that Applicant had established ownership of the first 1,800 feet of Old Codding Road, and therefore, had the right to use this portion of Old Codding Road for access. Ranney Dairy Farm, LLC, No. 22-ENV-00018, slip op. at 12 (Aug. 5, 2025) (Walsh, J.) [hereinafter, the August 5 Decision]. The motion was denied in part because it was unclear to the Court how ownership of the first 1,800 feet of the road related to the proposed lots' access, such that the Court could not determine whether all issues before the Court were resolved by the Court's conclusion. Id. The Court denied Neighbors' cross-motion. Id. Neighbors then filed a motion seeking reconsideration of the August 5 Decision.

In a September 15, 2025 Entry Order, the Court denied Neighbors' motion to reconsider the August 5 Decision. Ranney Dairy, LLC, No. 22-ENV-00018 (Sept. 15, 2025) (Walsh, J.). At the outset of the post-remand merits hearing, Neighbors' counsel functionally raised additional reasons to reconsider the August 5 Decision. They assert that Applicant's supplemental statement of material facts, filed on June 13, 2025, was improper and untimely filed such that this Court should not have considered it.[1] First, Neighbors are not entitled to a second motion to reconsider. See In re SP Land Co., LLC, 2011 VT 104, ¶ 16, 190 Vt. 418 (noting that this V.R.C.P. 59(e) is largely identical to the federal corollary, F.R.C.P. 59(e) and citing to federal case law interpreting the rule); see also PLF Vineyard Sky, LLC v. Vt. Pub. Utility Comm'n, No. 2:23-cv-154, slip op. at 1 (D.Vt. Sept. 16, 2024)

---

[1] The Court understands that Neighbors' counsel has been experiencing an ongoing family illness beginning sometime this past summer that may have impacted this initial motion to reconsider. The Court expresses sincere condolences and well-wishes to counsel with respect to this ongoing illness.

(Sessions, J.) (citing Energy Transp. Grp., Inc. v. Borealis Mar. Ltd., No. 21-CV-10969 (S.D.N.Y. June 9, 2024)).

Second, the assertion misstates the scope of the motion practice, including their own filings. Applicant moved for summary judgment on March 7, 2025. On May 7, 2025, following a stipulated extension, Neighbors both opposed the motion and cross-moved for summary judgment in their favor. Again, following a stipulated extension, on June 13, 2025, Applicant responded both in support of its own motion and in opposition to Neighbors. In so doing, Applicant filed a supplemental statement of undisputed material facts. This filing in response to Neighbors' cross-motion was contemplated by V.R.C.P. 56(c)(2), which states that "[t]o the extent that the responding party asserts that there are additional material facts that should be considered, the party may file a separate and concise statement of additional material facts in numbered paragraphs . . . ." In this context, Applicant was responding to Neighbors' cross-motion. Neighbors, as the moving party, explicitly had the opportunity to respond to Applicant's filing in opposition to its cross-motion, including the supplemental statement of material facts. See V.R.C.P. 56(b) (setting forth the time to file responses and/or replies to motions for summary judgment, including cross-motions, such as Neighbors' motion); see also V.R.C.P. 56(c)(4) (allowing for a moving party, or here, cross-moving party, to file a reply to a nonmoving party's allegedly disputed facts.). Neighbors did not file such a reply despite one being contemplated by Rule 56. Thus, Neighbors' assertion that they were without the ability to respond to these facts pursuant to V.R.C.P. 56 is incorrect and inconsistent with the motion practice, most notably, their filing of a cross-motion for summary judgment.

For these reasons and those set forth in the September 15 Entry Order, to the extent that Neighbors seek to reargue and relitigate matters determined by the August 5 Decision and motion practice, the Court has already denied their motion to reconsider and there is no basis to relitigate the previously decided matter.

**Factual Background[2]**

1. Applicant Ranney Dairy Farm, LLC owns property located at 700 Westminster West Road, Westminster, Vermont (the Property).

2. The Property is ±161.6 acres and has frontage on Westminster West Road, McKinnon Road, and Old Codding Road.

3. The Property was originally owned by Elijah Ranney who, in the 1700s and early 1800s, owned several parcels located in the Town. These were identified as: 1) Lots 3 and 4, Range 3; and 2) portions of Lot 3, Range 4, and Lot 2, Range 3 (initially owned by Samuel Phippin).

4. In 1810, Ephraim Ranney, Jr. sold the northeast corner of Lot 2, Range 3 to Elijah Ranney.[3] Lot 2, Range 3 is south of Lot 3, Range 3. This parcel consisted of approximately 10 acres of land located on the northeast side of Codding Road.

5. In 1818, Elijah Ranney sold the southern half of Lot 3 of Range 3, the 10-acre portion of Lot 2 of Range 3 he received in 1810, and approximately 1 acre of land east of Westminster West in Lot 3 of Range 4 to Joseph Ranney.

6. In 1846, Henry P. Ranney received these properties from Joseph Ranney's estate and the parcels were described as one parcel.

7. In 1910, Henry Ranney's daughter, Delia Ranney Hall, received these properties from her father's estate.

8. It is not genuinely disputed that this parcel as received by Ms. Ranney Hall is presently owned by Applicant. The parcel as received includes the southern half of Lot 3, Range 3, the 10-acre portion of Lot 2, Range 3, and the approximately 1 acre of land in Lot 3, Range 4.

9. Neighbors own property generally to the south of Old Codding Road and their properties generally originate in parcels owned initially by Samuel Phippin identified as Lot 2, Range 3 by the Town.

10. In 1795, Samuel Phippin sold that land to Joseph Phippin, who in turn sold that land to Ephraim Ranney, Jr. the same year.

---

[2] Some of the facts included in this section are background facts that were touched on at the post-remand merits hearing but primarily addressed in full at the Court's October 2023 merits hearing. These facts largely relate to orienting the reader to the parties, the properties at issue in this case, and the project and have not been disturbed by the Vermont Supreme Court's decision on appeal. There are many facts in the Court's December 2023 Merits Decision that remain undisturbed by the Vermont Supreme Court's decision but are largely not relevant to the pending issue before the Court and are therefore excluded from this decision. Additionally, the chain of Applicant and Neighbors' ownership was established in the August 5 Decision but also reestablished at the merits hearing. The Court largely restates the chain of ownership for completeness.

[3] Ephraim Ranney, Jr.'s ownership of Lot 2, Range 3 is discussed below.

11. In 1810, as addressed above, a 10-acre portion of the northeast corner of Lot 2 of Range 3 was sold to Elijah Ranney.

12. Ephraim Ranney, Jr. retained the remainder of Lot 2, Range 3 until 1817 when he sold that remaining land to Elijah Ranney. This deed defines the parcel as lying "south of the east-west road," which is Old Codding Road. Ex. 31.

13. At this point in time, Elijah Ranney owned all of the Property and all of Lot 2, Range 3.

14. In 1835, Elijah and Joseph Ranney sold the 70 acres to the south of Old Codding Road of Lot 2, Range 3 and portions of additional lots to Lyman C. Ranney. This deed described the parcel as lying south and west of the road and does not include a reference that the road was included in the conveyance. See Ex. 34.

15. After Lyman Ranney's death, his son Alfred P. Ranney and Alfred's wife transferred the land to Otis and Mary Buxton in 1870.

16. Applicant proposes to subdivide the Property into three lots, two of which will be designated as residential lots. One residential lot will be 6.8 acres, the other residential lot will be 13.45 acres, and the third retained lot will be 141.27 acres (the Project).

17. The two new residential lots will be accessed from Old Codding Road, a dirt road.

18. Old Codding Road as a traveled way has existed since at least the early 1800s.

19. Old Codding Road is accessed by McKinnon Road, to the west of the proposed new lots, and generally runs eastward for approximately 1 mile before doglegging towards the southeast.

20. Old Codding Road serves as the sole access for multiple residences and parcels, including Neighbors' parcels.

21. Applicant has retained Joseph A. DiBernardo as an expert in this matter.

22. Mr. DiBernardo owns DiBernardo Associates, LLC and is a licensed land surveyor in Vermont.

23. At this Court's original October 2023 trial, Mr. DiBernardo was certified as an expert in land surveying, and this certification was again recognized in this Court's November 2025 merits hearing.

24. Mr. DiBernardo has conducted extensive historical research on the Property and Old Codding Road, including examination of historical deeds and land surveys.

25. Some of this land surveying work included field research, and other aspects of it involved using technologies that are typical within the industry and take into consideration the historical record.[4]

---

[4] At trial, Neighbors repeatedly objected to the introduction of certain documents, largely tracings and maps of the Town containing the original lot and range numbers and other related identification. To the extent that these

5

26. This includes CAD Software, which is how land surveyors draw maps, find known points, and create lines between known points.

27. Also used was Light Detection and Ranging (LIDAR) technology, which uses light to develop three dimensional maps of the earth's surface. Some of this data comes from the State.

28. This also includes Bare Earth Modeling, which can pick out lines representing things like stone walls. Mr. DiBernardo is trained to use this modeling and uses this data as a tool in his research to overlay on his survey to establish coordinates.

29. The Property's southern boundary has been established as encompassing Old Codding Road in relevant portions as established by the August 5 Decision.

30. While Neighbors disagree with the established lines, they have presented no competing survey, nor have they established any flaw in the survey methodology either through cross-examination or through the presentation of their own expert land surveyor. No such competing expert was retained in this matter by Neighbors.

31. There is no formal recording of any laying out of the road by the Town in applicable land records.

32. Despite this absence of a record, Old Codding Road has existed since the early 1800s.

33. There is evidence of Old Codding Road, sometimes referred to as Old County Road, being used as a roadway for a significant period prior to the discontinuance.

34. In 1852, there was a petition to discontinue Old Codding Road as a public road.

35. There was no immediate action by the Town to respond to that petition or discontinue that road at or near to that time.

36. In 1893, the Town formally discontinued Old Codding Road as a public road which is recorded Town Land Records. Exhibit 5.

37. Applicant, for the reasons set forth in this Court's August 5, 2025 Decision, owns the first 1,800 feet of Old Codding Road, running from McKinnon Road.

---

documents form not just the basis of the August 5 Decision, which the Court has already declined to revisit for the reasons set forth herein, but also this Decision the Court is confused by the objection to these documents. It is undisputed that the documents are recorded in the Town Land Records. Although somewhat confusingly phrased, the Court generally understands Neighbors to object based on their assertion that the documents fail to comply with a recording statute, should not have been recorded, and thus should not have been admitted under the Vermont Rules of Evidence. The Court notes that these objected-to documents are admissible in this Court pursuant to V.R.E.C.P. 2(e), which allows for the admission of evidence "that is not admissible under the Rules of Evidence . . . in the discretion of the court if it is of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs."

38. Following the 1,800 feet, the relevant portion of the Property largely lies in Lot 2, Range 3 and comprises the northeast 10 acres of that lot and range.

39. An 1846 partition of Joseph Ranney describes which of Joseph Ranney's children receive which parts of his estate. The description of the 10 acres of Lot 2, Range 3, presently owned by Applicant references the lot's southern boundary as falling southerly on the road, which would include Old Codding Road. See Ex. 33.

40. This is consistent with earlier deeds concerning the lower 70 acres of Lot 2, Range 3 dated 1817 and 1835, which include a description of those 70 acres subdivided from the 10 acres of Lot 2, Range 3 presently owned by Applicant as being the acreage "lying south of the east-west road . . .." Ex. 31; see also Ex. 34.

41. There is no evidence that Neighbors own the entirety of the relevant portion of Old Codding Road.

42. Applicant has established through deeds ownership of sufficient portions of Old Codding Road.

43. Applicant does not have a deeded right-of-way to use Old Codding Road.

44. Applicant's predecessor in interest granted a series of right-of-way deeds to use Old Codding Road over the Property. See Exs. 36—39.

45. At least two parcels that use Old Codding Road for access, one owned by Jared Rolston and the other owned by the successor in interest to Philip Ranney, do not have a deeded right-of-way to use Old Codding Road, but nevertheless make use of the road.

46. The Property surrounds property formerly owned by Philip Ranney, such that Phillip Ranney's former property is landlocked. Phillip Ranney's former property was previously subdivided from property owned by his and Applicant's common immediate predecessor in interest, Philip Ranney's parents.

### Discussion

The sole issue that remains before the Court following remand and the Court's August 5 Decision is whether Applicant has established the right to use Old Codding Road for the access in the portion of the road running from 1,800 feet to the proposed Project access points. For the reasons set forth herein, we conclude that it has.

7

## I.    Public Road

Applicant first argues that Old Codding Road was a public road and following its discontinuance in 1893, all property owners who retained property along the discontinued road retained a right to use it.  We agree with this assertion.

The first reference to Old Codding Road in evidence is in a deed dated January 1, 1810 from Ephraim Ranney Jr. to Elijah Ranney.  See Ex. 30.  While it may be likely that Old Codding Road, as a traveled way, was in existence before that date, it is the only date with sufficient specificity in evidence to provide a point of reference.  In 1810, the Town would have needed to adhere to Laws of Vermont, ch. XXVI, § 1, at 347—48 (1797) [hereinafter, the 1797 Act] to formally open a public road.  The 1797 Act, and compliance therewith, has been analyzed in Daiello v. Town of Vernon, 2022 VT 32.  In Daiello, the Court recognized that there were two legal requirements under the 1797 Act to create a road: "(1) an official survey had to be conducted and recorded; and (2) the selectboard had to lay out the road."  Id. at ¶ 53.  The Daiello decision recognizes that "laying out" of a road need not be an official, recorded act to have occurred.  We lack such an official document in evidence in this case. We similarly lack a survey of Old Codding Road that was completed and recorded as required by the act.[5]  In the absence of such a survey, Daiello requires this Court to conclude that Old Codding Road was not laid out as a public road pursuant to the 1797 Act.[6]

The Court understands Applicant's   offer is that Old Codding Road was functionally a public road prior to its discontinuance through implied dedication and acceptance.  Applicant argues that there is evidence of public use prior to discontinuance such that the road was public.[7]

"Dedication is the setting apart of land for public use, either expressly or by implication of law."  Druke v. Town of Newfane, 137 Vt. 571, 574 (1979).  Roadway dedication requires an offer of

---

[5] Applicant has not pointed the Court to any survey that purports to meet this requirement of law, nor does the Court believe such a survey has been submitted into evidence in this case.

[6] The Court notes that even if Old Codding Road was in existences prior to 1797, prior iterations of the 1797 Act, one in 1782 and another in 1779, both required some level of survey of a highway to be made and recorded.  See Doran v. Town of W. Haven, et al., No. 21-CV-00221, slip op. at 4—5 (Vt. Super. Ct. Civ. Div. Aug. 31, 2023) (Shafritz, J.) (analyzing the 1782 and 1779 process by which a town could statutorily condemn and create a public road, and Daiello).

[7] In Daiello, the Vermont Supreme Court cites to two cases from the 1810s in which a road was found to be public despite a lack of survey and formal record of the town laying out the road.  Daiello, 2022 VT 32, ¶ 49—50 (citing Emery v. Inhabitants of Washington, Brayt, 129—30, 1818 WL 1252 (Vt. 1818); Bailey v. Town of Fairfield, Brayt, 128, 1818 WL 1251 (Vt. 1818)).  While Emery was a liability case, Bailey appears to stand for the principle that a road may be public without a recorded survey or record of laying out and its public status could be demonstrated by other parol evidence.  This indicates to the Court that, even as far back as the time period at issue in this case, there was a recognition that roads may be deemed public through means other than statutory condemnation.

8

dedication and acceptance. Smith v. Town of Derby, 170 Vt. 553, 554 (1999) (mem). Dedication may be express or implied and therefore does not need to be demonstrated in a writing or an affirmative act by the owner. Druke, 137 Vt. 574. In Druke, the Vermont Supreme Court recognized that:

> Long acquiescence in use[] by the public, if the attending circumstances clearly indicate an intent by the owner to devote the land to public use, is evidence upon which a dedication may be predicated. The allowance by the owners of repairs at public expense is one circumstance that strongly tends to show the intent to dedicate.

Id. at 575 (citations omitted). The Vermont Supreme Court has recognized that the "theory underlying dedication is that the owner-permitted use of private property by the public creates . . . an expectation of continued use that estops the owner from preventing it." Town of Newfane v. Walker, 161 Vt. 222, 226 (1943). Thus, it is "use, not ownership, [that] is the crux of dedication." Walker, 161 Vt. at 226.

Despite the great length of time since Old Codding Road was discontinued, dedication may be found here.[8] While we lack evidence of maintenance or repair by the Town, we have clear evidence that the public in the 1800s believed Old Codding Road to have been a public road. First, in 1852, there was a petition to discontinue Old Codding Road that was not acted on.[9] It is undisputed that this petition to discontinue concerned Old Codding Road. There is no evidence before the Court asserting that this document concerned another section of roadway. At this time, Henry P. Ranney owned all of the Property currently owned by Applicant. See Ex. 33. Thus, it appears clear that, as of at least 1852, those in the Town believed that Old Codding Road was a public road and had been offered to the Town as such. There is no record of what the Town did in response to this 1852 petition, but given the lack of recorded writing, and the ultimate action taken in the 1890s on this roadway, it appears that nothing occurred in 1852.

Thus, at least as of 1852, the Town was on notice that the public believed that the roadway had been dedicated by implication to the Town as a public road despite the lack of a survey. The Town, as of 1852, accepted by implication the roadway as a public roadway by declining to discontinue it and allowing the roadway to be retained in this capacity. The public nature of the road became the status quo for Old Codding Road until the Town formally discontinued the road in 1893. See Ex. 5.

---

[8] The Court notes that, for reasons set forth herein and in the August 5 Decision, Applicant and its predecessors in interest have established ownership of the road in varying degrees throughout the length of the relevant portion.

[9] Applicant had filed with the Court's electronic filing system for the post-remand trial an exhibit memorializing this petition, but that Exhibit was not offered or admitted into evidence. See Ex. 42. Despite this, the Court received credible evidence that this petition in 1852 occurred and concerned Old Codding Road and the exhibit's contents were discussed at trial.

Because the evidence establishes that Old Codding Road had become a public road by implication prior to its discontinuance, when the public road was discontinued, the abutting landowners, including Applicant and Neighbors' respective predecessors in interest, retained a private right of access over Old Codding Road. See Okemo Mountain, Inc. v. Town of Ludlow, 171 Vt. 201, 207 (2000) (citations omitted). For this reason, Applicant has demonstrated that it has sufficient access to use Old Codding Road, including for this development, by virtue of its public nature prior to 1893 and discontinuance in that year.[10]

## II.     Private Road

Alternatively, Applicant argues that it retains the right to use Old Codding Road by virtue of owning the land underlying Old Codding Road in whole or in part.[11] We conclude that it has such a right.

Deeds related to the Lot 2, Range 3 property, of which the northeastern 10 acres is presently owned by Applicant, indicate that Applicant retained the right to use Old Codding Road. Lot 2, Range 3 was at one point part of a single lot, through which Old Codding Road ran after it doglegged south from Lot 3, Range 3. At one point in time, Applicant's predecessor-in-interest owned the entirety of Lot 2, Range 3 and Lot 3, Range 3, meaning that Applicant's predecessor owned the entirety of the relevant portions. In the previously referenced 1846 partition of Joseph Ranney describing the allocation of his estate to his children, the southern boundary of the lot, including the 10 acres of Lot 2, Range 3 presently owned by Applicant is described as falling southerly on the road, which would include Old Codding Road. See Ex. 33. This is consistent with an earlier deed concerning the lower 70 acres of Lot 2, Range 3. That deed, dated 1817, includes a description of those 70 acres subdivided from the 10 acres of Lot 2, Range 3 presently owned by Applicant as being the acreage "lying south of the east-west road . . . ." Ex. 31. The east-west road is Old Codding Road. This is consistent with

---

[10] The Court notes that this conclusion, while supported by the facts and law, also results in the least amount of legal ambiguity regarding the status of Old Codding Road and those who use it for access, generally. As the Court has noted, there are property owners who use the road without deeded rights of way, and such use is either welcomed or tolerated by Neighbors. This result ensures that those who use the road for access and have done so for significant lengths of time without clear and obvious origins of rights to do so, retain the status quo of their access. This includes Neighbors and those who may not be before the Court in this zoning dispute. What's more, the Court's conclusion in the August 5 Decision would likely have significant implications for Neighbors' ability to use Old Codding Road for access and likely present the need for additional litigation to clarify rights to use the road for access. This would likely be true for parties not before the Court as well. The Court's conclusion herein based in Okemo limits the need for such litigation.

[11] Again, Applicant's ownership of the first 1,800 feet of Old Codding Road has been established as set forth in the August 5 Decision. This decision concerns only the portion of Old Codding Road that runs beyond those 1,800 feet that is used for access to the proposed lots.

an additional deed dated 1835 describing these 70 acres as south and west of the road but not including the road. See Ex. 34.

There are a series of deeds created following this period which purport to assert that the Property's boundary following the first 1,800 feet of Old Codding Road falls at the centerline of the road, or that property owners to the south of the Property own to the centerline. These subsequent deeds, however, are inconsistent with the last deed separating Lot 2, Range 3 into a 10-acre parcel, presently a part of the Property, and a 70-acre parcel, south of Old Codding Road. Neighbors have provided no instrument that asserts that all or some of them own to the north side of Old Codding Road.[12] Neighbors have provided no expert testimony to counter that provided by Mr. DiBernardo or that would challenge the credibility of his surveying work in this case.

Thus, in the alternative to the conclusion set forth above with respect to Old Codding Road's former public nature, Applicant has provided sufficient evidence that it has the ability to use Old Codding Road for access based on the boundaries of the Property even if the road was at all times private. This is based on surveying work completed consistent with industry standards and on the lot and range numbers governing these parcels dating back to the Town's founding. See Ripchick v. Pearsons, 118 Vt. 311, 316 (1954).

## Conclusion

For the foregoing reasons, the Court concludes that Applicant has demonstrated that it has the right to use Old Codding Road for access to the Project's proposed lots. First, Old Codding Road was a public road prior to its discontinuance, and therefore, Applicant has retained a right of way over Old Codding Road. Second, in the alternative, due to the Property's boundaries as they relate to Old Codding Road, Applicant has a right of way over Old Codding Road. Thus, for this reason, and the reasons set forth in the Court's December 8, 2023 Decision, to the extent that portions of that Decision were not disturbed by the Vermont Supreme Court's October 24, 2024 Decision, this Court affirms the subdivision permit issued by the Town. This affirmation is subject to the condition that

---

[12] At this post-remand merits hearing, Neighbors pointed to a survey of Ms. Goulas' property. Ex. FFF. No surveyor provided testimony of what this document depicts, particularly as it relates to the Property line. Further, it contains no key and therefore does not establish any aspect of Ms. Goulas' property boundary for the purposes of this appeal. This document also does not appear to be recorded. Further, when testifying as to a different unrecorded survey, Exhibit FFF, there was confusion about what this document established and Ms. Goulas appeared to admit that this document established the southern stone wall as her property line.

Applicant submit to the Town an amended subdivision plat consistent with the conclusions of this Court.

This concludes the matter before the Court.  A Judgment Order accompanies this Decision.


Electronically signed this December 19, 2025 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division